380 So.2d 702 (1980)
Joe C. ASHLEY
v.
VOLKSWAGEN OF AMERICA, INC., Jefferson Parish Enterprise, Inc., d/b/a Bryan Motors, James J. Bryan, Raymond H. Eppling, and Fred J. Legendre.
No. 10771.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1980.
Rehearing Denied March 17, 1980.
*703 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr. and Gerald F. Slattery, Jr., New Orleans, for plaintiff-appellant.
Chaffe, McCall, Phillips, Toler & Sarpy, Charles L. Chassaignac, Gregory C. Thomas, New Orleans, for cross-appellant & defendant-appellee United States Fidelity and Guaranty Co.
Bernard, Cassisa, Babst & Saporito, Walter M. Babst, Metairie, for defendants-appellees James J. Bryan, Raymond H. Eppling, Individually and Raymond H. Eppling, as Liquidator of Jeff. Parish Enterprises, Inc. d/b/a Bryan Motors.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, J. David Forsyth, New Orleans, for defendant-appellee Volkswagen of America, Inc.
Before GULOTTA, CHEHARDY and HOOD, JJ.
GULOTTA, Judge.
Joe C. Ashley appeals from the dismissal of his redhibition suit arising out of the October 8, 1973 purchase of an Audi automobile from Bryan Motors. Prior to plaintiff's purchase, this 1973 automobile had been used by the agency as a demonstrator and had been sold on two separate occasions to two prior owners. Because of mechanical problems, primarily overheating and electrical malfunctioning, and general owner dissatisfaction with the vehicle's operation, the automobile had been returned to the agency by each purchaser and the purchase price refunded. Plaintiff claims that the automobile was represented by the salesman to be a demonstrator and that it was purchased as such; however, the purchase order signed by Ashley and the invoice indicated that the automobile was being sold as a used vehicle. The registration certificate states it was acquired new.[1]
As did the prior owners, plaintiff experienced mechanical difficulties consisting primarily of overheating, electrical failures, air conditioning and brake problems. According *704 to Ashley's testimony and that of his wife, the numerous, continuous and recurring failures and unsuccessful attempts by Bryan and other Audi dealerships to repair the vehicle caused complete dissatisfaction and disgust, resulting in discontinued use of the vehicle in May 1975. At that time, because of the automobile's failure to start, plaintiff ceased to use it and allowed the automobile to remain idle at his home, resulting in its complete deterioration.[2] This suit was filed on March 31, 1975.
Between the date of purchase (October 8, 1973) and the time he stopped using the automobile (May 1975), plaintiff had driven it approximately 35,000 miles. According to a repair order, the automobile was serviced by Bryan as early as October 15, 1973 for complaints of an overheating engine, brake and electrical problems. On October 30, 1973, heater-control problems and transmission problems were corrected. Failure to start, electrical problems and overheating required that the automobile be returned to Bryan on February 13, 1974. The automobile was again repaired under the warranty. Francis Mora, a Bryan Motors mechanic who had serviced this automobile and who thereafter was service manager at Pan-Am Motors and River Road Porsche-Audi,[3] stated that on May 10th and 17th, and June 12th of 1974, the automatic transmission was repaired, rod bearings were replaced and the air conditioning was serviced. Ashley testified also that on September 18, 1974 the automobile was returned to the agency with a complaint that it was running hot. On September 19, 1974 electrical and overheating problems required repairs at a Shell service station.
The automobile was returned to the agency on October 10, 1974 with complaints of excessive oil use. Mora testified that on that occasion the oil and oil filter were changed, but the oil dipstick was missing from the vehicle. He explained that the absence of the dipstick resulted in the loss of oil. On October 23, 1974 a thermostat and hoses were replaced. On December 18, 1974 the automobile was returned with complaints of electrical failure. This complaint was followed on December 27, 1974 with complaints of excessive oil use.
The fuel pump was changed on January 10, 1975, and on January 19, 1975 the automobile was again returned with complaints of excessive oil use and overheating problems. The last repair order for the automobile was the January 19th occasion; at that time plaintiff had driven the vehicle approximately 25,000 miles.[4]
The trial judge stated in written reasons for judgment that Mora, defendants' expert witness, "expressed the opinion that there was no manufacturing defect noted by him in the car." Relying on Mora's further testimony, the court concluded:
"The court believes the only expert called in this matter that the principal cause of the car's ultimate failure after 43,000 miles of use (35,000 by plaintiff and his wife) was inadequate or improper owner maintenance."
Mora's testimony generally supports the trial court's conclusion that the problem was owner maintenance. This, however, is not the entire extent of this expert's evaluations. Mora testified that the air conditioning unit was installed by the dealer. According to Mora, installation of an air *705 conditioning unit by the dealer rather than by the factory is a complicated process. When the unit is not installed properly, electrical problems and overheating result. He stated also that the problems which occurred during Mexic's ownership arose from his son's abuse of the automobile. This abuse, according to Mora, resulted in brake failure and overheating, which can cause a distortion of the engine block and head. He also said that when the dipstick is missing, oil is lost, which could very well result in low oil pressure and cause rod bearing problems. Finally, Mora summarized:
"Most of the problems that I have seen through the repair orders are either overheating, generally it looked like most of them were corrected by replacing hoses or belts, one or the other. The electrical problems, it's kind of hard to say. It had mostly overheating problems, too, because of electrical problems. They could have definitely come about in conjunction with the air conditioning, the installation. I can't verify it, though."
Mora then added:
"I really don't see a factory defect in the car from this.... I think a lot of the problems go back to the very beginning. The original owner with a lot of abuse on the automobile itself."
We believe an objective analysis of the testimony leads to the conclusion that despite plaintiff's numerous and continued complaints about the automobile during his eighteen or nineteen months' operation of the vehicle, he nevertheless drove it for approximately 35,000 miles. According to the expert witness' testimony, the causes of the problems were Ashley's failure to provide proper maintenance to the automobile, abuse by a prior owner, and problems resulting from dealer-installed air conditioning.
Although it is clear from the record that plaintiff suffered a great deal of inconvenience during his eighteen or nineteen months of ownership and use of the car over approximately 35,000 miles, we cannot say that the defects were such as to warrant a rescission of the sale, considering the evidence of plaintiff's own neglect of maintenance. We conclude, however, that the facts in our case entitle plaintiff to relief in quanti minoris. LSA-C.C. arts. 2543 and 2544.
Our case is factually similar to Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir. 1974), writs refused 303 So.2d 186 (La.1974). In Menville the automobile was purchased with approximately 19,000 miles on it, and the plaintiff drove it approximately 48,000 miles over a twenty-six-month period. Because the problems with the automobile in Menville were principally in the nature of excessive and extraordinary maintenance rather than rehibitory defects, and because of the long period of extensive use prior to the rescission demand, we concluded in Menville that a reduction in the purchase price was appropriate.
In Menville we allowed a reduction in the purchase price to the extent of $400.00, plus the cost of repairs. We stated that, where a plaintiff is entitled to a reduction in price, the amount of the reduction should be "the difference between the sale price and ... the fair value as of the time of sale, if the defects had been known." 300 So.2d 862. Factors to be considered include expert opinion testimony, costs of repairs, or evidence of any other facts bearing on the price to which informed parties would have agreed. Menville v. Stephens Chevrolet, Inc., supra; Williamson v. Strange, 323 So.2d 875 (La. App. 2nd Cir. 1975). See also, Couch v. Frichter's Sportsmen's Haven, Inc., 365 So.2d 901 (La.App. 4th Cir. 1978), writ refused 367 So.2d 1185 (La.); Davis v. Davis, 353 So.2d 1060 (La.App. 2nd Cir. 1977), writ refused 355 So.2d 549 (La.1978); Guillory v. Pitre Ford Co., 345 So.2d 1274 (La.App. 3rd Cir. 1977). Ultimately, the amount of the reduction is within the court's discretion.
In a quanti minoris case it is the plaintiff's burden to prove with a reasonable certainty the amount to which the price should be reduced. See Coco v. Mack Motor *706 Truck Corp., 235 La. 1095, 106 So.2d 691 (La.1958). In our case evidence relating to a possible basis for reduction can be elicited only from the testimony of Mora, the expert. He stated that the last occasion on which he inspected the automobile was sometime in 1975, and at that time the automobile had been driven approximately 39,000 miles. He stated that it was running poorly and needed maintenance and tune up work. It was his opinion that the total repairs would amount to approximately $500 and that the expenditure of that amount would put the automobile in a "first-class condition." We conclude under the circumstances that plaintiff is entitled to a credit to the extent of $500.
This suit was directed against the automobile dealership, Bryan Motors; the distributor, Volkswagen of America, Inc.; James J. Bryan, President of Bryan Motors; Raymond Eppling, Vice President and General Manager of Bryan Motors; and U. S. Fidelity and Guaranty Company, which had issued a bond in favor of Bryan Motors providing protection for persons who suffer a loss as a result of any failure to comply with the conditions of a written contract made by Bryan in connection with the sale or exchange of an automobile in the conduct of its business.
Based on the undisputed testimony of Mora, we conclude that the defects did not exist at the time of manufacture and when the automobile was received by Bryan Motors from the distributor, there were no defects in the automobile. Under the circumstances, the manufacturer or distributor is not liable. See Rey v. Cuccia, 298 So.2d 840 (La.1974); Radalec, Incorporated v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830 (1955). The problems with the automobile resulted from the dealership's failure to properly repair the automobile and service the vehicle after return to the agency by the prior owner and before the sale to the plaintiff. Under the circumstances we conclude plaintiff is entitled to a judgment against Jefferson Parish Enterprises, Inc., d/b/a Bryan Motors, in liquidation, and Raymond H. Eppling, in his capacity as liquidator.[5]
Because no showing has been made there existed any dereliction of responsibility either on the part of James J. Bryan or Raymond Eppling in their capacity as executive officers of the corporation, plaintiff is not entitled to a judgment against these parties individually. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
U.S.F. & G. executed a surety bond with Jefferson Parish Enterprises, Inc. d/b/a Bryan Porsche-Audi in favor of the Motor Vehicle Commissioner for the State of Louisiana, in the sum of $5,000. The conditions of the bond, which was executed in conformity with the requirement for a dealership under R.S. 32:718(D), is that the dealer
"... shall fully comply with the conditions of any written contract made by him as such dealer in connection with the sale or exchanges of any motor vehicle; and shall pay or cause to be paid by any person any loss or damages which any person shall sustain as a result of any failure to comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle or as a result of any violation of the laws of the State of Louisiana in the conduct of the business for which he is licensed."
The language of the bond to a large extent follows the language of the statute, which is designed to protect the purchaser against the unscrupulous automobile dealer. We do not interpret the bond to be applicable to a situation where defects in an automobile result in a judgment in quanti minoris in favor of a purchaser, based on a seller's implied warranties of fitness. In this case there was no failure on the part of the dealership to deliver the automobile as purchased by Ashley in accordance with the written agreement. Nor was there any *707 misrepresentation relating to the identity of the vehicle, or any other unscrupulous dealing on the part of Bryan Motors.
Our courts have strictly construed statutory bonds. Long Bell Lumber Co. v. S.D. Carr Const. Co., 172 La. 182, 133 So. 438 (1931); State v. Read, 164 La. 315, 113 So. 860 (1927). See also Boudreaux v. Puckett, 433 F.Supp. 650 (E.D.La.1977). When we strictly construe the provisions of the bond, together with the purpose of the statute relating to the requirements of the bond, we conclude that U.S.F. & G.'s bond does not cover claims of the nature asserted by the plaintiff in this case.
Finally, defendants have raised the exception of prescription. Plaintiff's suit was filed on March 31, 1975. Bryan Porsche-Audi last repaired the vehicle in February 1974; plaintiff learned in April 1974 that Bryan was going out of business. Bryan referred Ashley for further repairs to Pan-Am Porsche-Audi (subsequently renamed River Road Porsche-Audi), which had taken over servicing of vehicles under warranty from Bryan. In June 1974 he contacted Bryan again (although the dealership was in liquidation, they apparently were still servicing vehicles under warranty), but they refused to repair the vehicle any further. Thereafter plaintiff took the automobile to Pan-Am/River Road Porsche-Audi for repairs. The automobile was last repaired by Pan-Am in January 1975. Defendants contend prescription began to run from the date of the last repair by Bryan, February 1974, and thus the March 31, 1975 lawsuit was untimely. We do not agree.
LSA-C.C. article 2534 provides that the redhibitory action must be instituted within one year from the date of sale, but this rule has been jurisprudentially extended. Where the seller attempts to remedy the defect, prescription begins to run only from the time he abandons the attempt to repair same. A. Baldwin Sales Co. v. Mitchell, 174 La. 1098, 142 So. 700 (1932); Woodward-Wight & Co. v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719 (1909); Mid-City Finance Co. v. Coleman, 232 So.2d 918 (La.App. 4th Cir. 1970); de la Houssaye v. Star Chrysler, Inc., 284 So.2d 63 (La.App. 4th Cir. 1973), writ denied 286 So.2d 662 (La.); Robertson v. Jimmy Walker Chrysler-Plymouth, Inc., 368 So.2d 747 (La.App. 3rd Cir. 1979), writs denied 371 So.2d 833, 834 (La.); Alexander v. Burroughs Corp., 350 So.2d 988 (La.App. 2nd Cir. 1977), affirmed and amended, 359 So.2d 607 (La. 1978); Williams v. Ford Motor Co., 307 So.2d 159 (La.App. 1st Cir. 1974), writ refused 309 So.2d 684 (La.).
Applying this rule to the situation here, we conclude either Bryan or the other agencies to which plaintiff was referred by Bryan performed work on the automobile within one year of the date the suit was filed. Under the circumstances we conclude plaintiff's cause of action has not prescribed.
Having so concluded, we reverse and set aside the judgment of the trial court. Judgment is now rendered and recast in favor of plaintiff, Joseph C. Ashley and against Jefferson Parish Enterprises, Inc., d/b/a Bryan Motors in liquidation and Raymond H. Eppling, in his capacity as liquidator, in the sum of $500.00. Plaintiff's claim against Volkswagen of America, Inc., James J. Bryan, and Raymond H. Eppling individually and U.S.F. & G. are dismissed. The third party demands also are dismissed. Costs to be paid by Jefferson Parish Enterprise, Inc., d/b/a Bryan Motors.
REVERSED AND RENDERED.
NOTES
[1] The automobile was first sold on March 12, 1973 to Simon Mexic for approximately $5,000. The sum of $4,475 was reimbursed to him when this automobile was returned to the agency. At the time he purchased the automobile, it had been driven 3200 miles. The automobile was then sold to Annette Shapiro for $4,891, including tax and license. This entire amount was reimbursed to her when she returned the automobile to the agency. According to the purchase order and invoice, plaintiff paid $4,635, including tax and license. Mexic drove the automobile approximately 3,000 miles and Shapiro drove it approximately 500 miles. An additional 1,500 or 2,000 miles was apparently placed on the automobile by the dealership between the time of Shapiro's return of the vehicle and plaintiff's purchase.
[2] Plaintiff's wife testified that although the automobile had been protected by a garage for some of the time the automobile remained idle and a plastic cover at other times, a glass had been blown out of it and a speaker had been taken. Ashley explained that the deterioration to the automobile was enormous. He described mildew covering the automobile and infestation of the interior by insects. A mechanic witness stated that when a car is permitted to remain idle for a period of two years, rubber components deteriorate and dry rot. Braking system absorbs a great deal of moisture and becomes deteriorated. The driving components of the car become rusty and rings freeze causing a great deal of damage.
[3] These agencies serviced Audi automobiles after Bryan went out of business.
[4] The odometer reading registered 33,000 miles. The automobile was used an additional 10,000 miles, apparently without complaint, until May 1975 when it failed to start, and use was discontinued by plaintiff.
[5] Raymond H. Eppling answers as liquidator on behalf of Jefferson Parish Enterprises, Inc. d/b/a Bryan Motors, and avers that the corporation is fully liquidated and dissolved. Eppling testified also that Bryan Motors was a defunct corporation.