SCHOTT, Judge.
This is an action by purchaser, Dr. Watts R. Webb, for a reduction in the price of a house he bought from seller, Frank A. Hughes, based upon allegations that the roof was defective at the time of the sale. Defendant-seller has appealed from a judgment in plaintiff’s favor for $6,357.00. The issues are whether plaintiff carried his burden of proving that the defects existed before the sale. LSA C.C. Art. 2530, and, if so whether plaintiff is entitled to the amount awarded, especially considering that the repair work done by plaintiff improved the quality of the roof bargained for when the Webbs bought the house.
On January 31, 1977, the Webbs agreed to purchase defendant’s house at 21 Park Island Drive in New Orleans for $145,-000.00. The sale was conditioned upon a roof inspection at defendant’s cost by an expert selected by plaintiff. On February 8 *1184 this inspection was carried out by Manuel Galland of Bruner-Mallet Roofing Company. He made the following report:
“Roof inspection made, the following found, there are no leaks, new roof was installed over pitch roof and is good for 25 yrs. Lower built up roof was installed on left center, other roofs are in fair condition and are good for approximately 10 to 12 yrs. These roofs seem to be approximately 8 yrs. old. I could not find anything wrong, at this time gutters need to be cleaned and painted, cost for cleaning and painting inside of all gutters $81.00.”
The act of sale was passed on May 31 and the Webbs moved in on June 3. According to them, it rained for the first time about two weeks after they moved in and they discovered extensive leaking in the carport, utility room and storage room of the house. They had some temporary repairs made, and in August engaged Louis Eichhorn to inspect the roof. He testified that the house was leaking and submitted a proposal to repair the roof for $5500.00. Plaintiff also obtained a proposal from Republic Roofing and Waterproofing Co., Inc., to repair the roof for $5,954.00, and in June, 1978, he had the roof repaired by Charles R. Madona, Jr., Inc. for $6,357.00.
Defendant’s first specification of error is that the plaintiff failed to carry his burden of proving that a defect existed in the roof before the act of sale. He contends that plaintiff’s evidence was insufficient considering the testimony of Galland, who inspected the house in February, 1977, the testimony of defendant and his wife that there were no leaks when they moved out at the end of May just before the act of sale, that of Claudette Long, a friend of defendant and his wife, that she was in their home many times and was aware of no leaks, and that of Frank Ferrara, a roofer who inspected the house for defendant in January, 1978.
The Webbs testified that the first time it rained, two weeks after they moved in, the roof leaked extensively over the carport, storage room and utility room, and this condition continued despite some patch work on the roof. The entrance to the house was through the leaking carport and Mrs. Webb stated that the leaking was so bad in the storage room that her belongings stored there got soaked, and she used a large trash pail to collect the water in that area. This testimony was corroborated by that of a domestic employee who worked for her in September and by the mail carrier who regularly came to the front door under the carport and who testified that one standing at the front door would get wet when it was raining. He also testified that it was leaking before the Webbs moved into the house. Louis Eichhorn, who inspected the house and submitted a bid in August, 1977, stated that the leaking and the condition of the roof which caused the leaking had existed for a long time prior to his inspection. He explained that the flat, built-up gravel roof over the carport and storage room was the problem area where two inches of water was standing, and the flashing was decayed with the result that water would enter the roof vents when it reached a certain level. He also found that the guttering around this area of the roof was leaking. Eichhorn testified that the Webbs told him they had leaking two weeks after they moved into the house.
The testimony of the Webbs and the Hughes was directly in conflict. The trial judge resolved this conflict in favor of plaintiff, and no basis exists for us to substitute our judgment for his on this question of credibility. Likewise, the trial judge’s resolution of the conflict between plaintiff’s witnesses, the maid and the mail carrier, as opposed to defendant’s witness, the friend and neighbor, will not be disturbed on appeal. The trial judge must have accorded greater weight to the testimony of Eichhorn as opposed to Galland and the record supports this conclusion. The best that can be said for Galland’s testimony is that he found no leaks in February, some three months prior to the time when plaintiff found their house leaking. On the other hand, Eichhorn testified without equivocation that there were leaks in *1185 August and that this condition had existed for a long time. Once the trial judge believed the Webbs that the house leaked so extensively two weeks after they took title the trial court could infer that this condition existed at the time of the sale. We decline to disturb this finding on the basis of Canter v. Koehring, 283 So.2d 716 (1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1975).
Defendant specifies error with regard to the amount of the judgment on three grounds:
1) The new roof installed by plaintiff was qualitatively better than the roof bargained for when the house was purchased;
2) Plaintiff was unjustly enriched when he got the price of a new roof to replace an old depreciated roof;
3) The award exceeded the amount plaintiff prayed for in his petition.
Repair work was done on the roof by Charles R. Madona, Jr., Inc. Mrs. Madona testified that her company inspected the premises and submitted a bid in June, 1978. She testified that there were several problems on the roof. The bottoms of 8 skylights in the pitched roof were imbedded in tar which had been applied to the flat roofs in the past. The gutters were in bad condition and were constructed in such a way that they would not carry the water away from the roof. Madona’s work included building up the 8 skylights, installation of asbestos base flashing to replace the metal flashing which was completely deteriorated, the extension of the overhang and installation of new gutters and replacement of rotten decking and other wooden components with celeure lumber. The work Ma-dona did encompassed not only the flat roof over the carport, storage room and utility room but the other two flat roofs on the house as well.
From Mrs. Madona’s testimony it seems that her work did encompass more than what was necessary to repair the leaks in the roof. In connection with one aspect of her testimony regarding the redesign of the gutters and the roof around them, Eichhorn had testified that the original design of the gutters was “crazy.” Thus, this aspect of Madona’s work went beyond correction of a defect but provided the Webbs with something better than they bargained for when they bought the house originally. Furthermore, complaints of leaking were confined to one part of the house under a specific roof and Madona’s work included the replacement of two other roofs. It does seem that the end product was well beyond what was necessary to correct the defects proved as existing at the time of the sale. The same must be said for the work done on the 8 skylight frames on the pitched roof. Finally, the record suggests that Madona installed material superior in quality to that which was replaced.
Other considerations seem to suggest that plaintiff ended up with more than they bargained for when they bought the house from defendant. Plaintiff’s witness, the mail man, testified that this house was built in 1961, and Galland estimated that the flat roofs had a lifetime of 10 to 12 years. This would be generally consistent with the assumption that a new roof has a 25 year lifetime. Thus, as a result of the work done by Madona the house had a roof good for 25 years, replacing one which had depreciated over a 16-year period. Furthermore, there is no explanation as to why this roof was not repaired shortly after plaintiff moved in but it seems clear that the price charged by Madona to do this work a year later was greater because of inflation alone. Finally, the longer plaintiff waited to do this work the more deterioration took place, especially in the wooden components of the roof.
This case is similar to Verlander v. Hoffer, 351 So.2d 229 (La.App. 4th Cir. 1977) writs refused, 353 So.2d 1037, where the court found that an award to repair a leaking roof properly took into account the age of the roof as known to the purchaser and accomplished “a result that does justice to all parties.” We recognize that there are factual distinctions between this case and Verlander, and that there were other reasons in Verlander why the trial judge had reduced the award from the amount which *1186 the purchasers actually spent to make the repairs, but we are convinced that a simple affirmation of the judgment before us would not accomplish justice for both parties and would to some extent unjustly enrich plaintiff.
We are confronted, however, with some difficulty in deciding the proper amount due plaintiff. Madona’s bid to do the work was $6,000.00 and she charged an extra $357.00 for replacement materials. But her bid was not itemized and there was no testimony itemizing her bid. However, we have the benefit of Eichhorn’s estimate which was made in closer proximity to the time of the sale and did not contemplate Madona’s redesign. Thus, we have concluded that the $5,500.00 bid by Eichhorn would more properly and justly compensate plaintiff than the amount paid Madona. In reaching this conclusion we have considered the possibility of remanding the case for additional evidence as to the proper amount due plaintiff but considering the costs which would be incurred by the parties in the adjudication of the matter we have concluded that a final judgment reducing the award to the amount of Eichhorn’s bill is just, legal and proper upon the record before us. C.C.P. Art. 2164.
Because of the conclusion we have reached it is unnecessary to consider defendant’s argument that the amount of the judgment exceeded the amount prayed for by plaintiff in his petition.
Accordingly, the judgment appealed from is affirmed but amended to reduce the amount of the judgment to $5,500.00 with legal interest from date of judicial demand until paid. The trial court costs are assessed against defendant. Each party will bear his own costs in this court.
AMENDED AND AFFIRMED.