410 So.2d 343 (1982)
Mr. and Mrs. Fernand G. PRAT, Jr.
v.
Mrs. Gladys L. HEYMANN.
No. 12166.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1982.
*344 Edward F. Wegmann, Geoffrey H. Longenecker, Wegmann & Longenecker, New Orleans, for plaintiffs-appellees.
Matthew H. Greenbaum, E. Sue Bernie, Fawer & Greenbaum, New Orleans, for defendant-appellant.
Before SCHOTT, GARRISON, and KLEES, JJ.
KLEES, Judge.
On January 17, 1977, the plaintiffs offered to purchase from Mrs. Gladys L. Heymann, the defendant, the house and property at 4039 Vendome Place, New Orleans, Louisiana for the price of $195,000 cash, and on January 20, 1977, the offer was accepted by defendant.
Prior to the time the plaintiffs occupied the home, which was built by defendant in 1939, they inspected it on several occasions in the presence of one or more people. When inspected by the plaintiffs, the house appeared to them to be in excellent condition and free and clear of any defects with the exception of a section of faded wallpaper in the dining room and a minor crack in the front wall which the defendant agreed to repair at her cost.
On May 20, 1977, approximately six weeks after the plaintiffs moved into the home, they began to encounter difficulty in opening and closing the front door, and *345 observed a rather substantial crack on the inside of the entrance porch. Later they observed that the grill work at the entrance porch had pulled away from the wall at the back of the porch and noticed a very large crack in the front wall just below the window. In the weeks thereafter, other defects began to manifest themselves and the plaintiffs then tendered the property to the defendant and made demand upon her for the return of the purchase price and all expenses incurred by them to preserve the property.
Upon the refusal of the defendant to accept plaintiffs tender of the property and accede to their demand for a return of the purchase price, plaintiffs engaged the services of a contractor at a cost of $80,183.41 to repair and renovate the buildings and other improvements situated on the property, so as to place them in the condition they appeared to be in at the time they agreed to purchase the home.
Plaintiffs sought a rescission of the sale and a return of the purchase price, together with expenses, damages and attorney's fees. Alternatively plaintiffs asked for a reduction in the purchase price of the property, to the extent of the $80,183.41 necessary to repair and renovate the buildings and improvements, together with expenses, damages and attorney's fees.
The only defense asserted on behalf of the defendant is that the defects complained of were apparent, or should have been apparent to the plaintiffs, upon simple inspection and ascertainable by any prospective purchaser making the simple inspection required of them by law.
The trial court ruled in favor of the plaintiffs but rather than rescinding the sale reduced the purchase price by $65,018.99. His reasons for judgments are as follows:

"REASONS FOR JUDGMENT"
"The evidence convinces me that at the time of the Prats' visits prior to the sale, the house appeared to be free of defects discoverable by simple inspection. It was always kept in mint condition by Mrs. Heymann, and cracks that had appeared had recently been filled and painted.
`The house nevertheless was fatigued at the time of the sale, as subsequent events so dramatically demonstrate.
`Whether the slab was then cracked, or cracked later, or whether, if cracked, the crack was of significance, is really of no moment. As Mr. Warshaw explained, the house had for years been on a roller coaster of shrinking and expanding soil until it finally reached the point where it could tolerate stress no longer and failed. Though the sudden failure occurred after the sale, the continuing stress and gradual fatigue had been of such long duration that at the time of the sale, the inherent inability of the house to tolerate further stress rendered it defective.
`I do not believe Mrs. Heyman knew of this defect. I doubt if anyone could have known the house had reached, literally, the breaking point.
`She knew the house had recurrent cracks, and had been told by Mr. Abry in 1974 that the house should be shored. But these are conditions caused by the soil common to the area, and would not, of themselves, render the house defective. Stack v. Irwin, 144 So.2d 648.
`But such knowledge would lead no one to the conclusion that the house was so fatigued, that it would fail at the next soil subsidance.
`The sale price should be reduced to cover the cost of correction, less the cost of pouring piles, which though necessary, were not part of the thing bargained for, see concurring opinion Phillips v. Schmidt, 311 So.2d 471.
`In addition to disallowing $13,200.00 for piles, also disallowed are $680.00 for Van Electric Co.; $268.00 for shower pan replacement; $232.42 for Carrollton Plumbing; $784.00 for Trendle, Inc.
`The award will include:

Bonura .................. $60,122.02
Roofer .................. 350.00
Mr. Schrenk ............. 790.00
Landscaping ............. 2,922.71
Landscaping ............. 834.26
 __________
 $65,018.99

*346 `New Orleans, Louisiana, this 21st day of December, 1979.
 /s/Gerald P. Federoff
 Judge"
From this judgment the defendant appealed asserting that the judgment in favor of the plaintiffs was in error. The plaintiffs answered the appeal and sought an award for the items which were disallowed plus attorney's fees pursuant to Civil Code Article 2545.
In a redhibitory action the plaintiff must prove by a preponderance of the evidence that the item sold contained a hidden defect before the sale which was not apparent by ordinary inspection and which rendered the thing unfit for its intended use or so imperfect that the purchaser would not have bought it had he known of the defect. C.C. 2520, 2521, 2530, Moreno's Inc., v. Lake Charles Catholic High Schools, Inc., 315 So.2d 660 (La.1975).
The record disclosed that a few years prior to the sale of the home in January of 1977 the house had been experiencing cracking in the walls, separation of the grillwork from the home and other defects. During the years prior to the sale to the Prats, the defendant constantly had people repairing the cracks and other defects which would return approximately every six months. In particular the record reveals that the residence was repaired by Charles Lang, a painter and plaster repairman, as late as October, 1976 and by the defendant's handyman, Floyd Villavasco, just prior to his retirement in September of 1976. Furthermore, Mr. Herman Abry, a contractor specializing in house raising and shoring testified that he advised Mrs. Heyman as far back as 1975 that the house was experiencing soil sinkage and should be shored.
Based on these facts the trial judge concluded that although the severe cracking and other damage manifested itself four to five months after the sale, the home was nevertheless defective at the time of the sale. We can find no manifest error in this factual conclusion.
The defendant-appellant does not seriously contend that the home did not contain severe cracks and that the foundation was sinking. She based the thrust of her argument on Civil Code Article 2521 claiming that the defects do not lend themselves to an action for redhibition or quantum minoris since they were apparent by a simple inspection.
In order to determine whether a defect is apparent by a simple inspection the courts have used a reasonable standard which is discussed Pursell v. Kelly, 152 So.2d 36 (La. 1963) at p. 41.
The proper test to be applied to this case, we think, as in all other cases of this kind, is whether a reasonably prudent buyer acting under similar circumstances, would have discovered the presence of termite damage in the premises.
In Fraser v. Ameling, 277 So.2d 633 (La. 1973), the Supreme Court reaffirmed the reasonable man standard but explained that while an inspection connotes more than a casual observation the buyer need not inspect with expertise or "deface" the thing purchased while inspecting it.
The plaintiffs, the realtor, Eileen Wallen, L. K. Clement, Jr., at attorney friend of the plaintiffs and Judge James D. Carriere, all testified that the home appeared to be well kept and in excellent condition, except for some minor imperfections.
The witnesses called by the defendant all stated that they noticed the defects on their own because they were readily apparent. Two of the witnesses, Tippin Moran, and Dr. Michael Ellis, who visited the home in July of 1976 some six months prior to plaintiffs offer, said there were apparent defects and submitted an offer of $140,000 because Dr. Ellis liked the house, but it was a great deal more than he could afford and he was thinking of converting the cabana area to an apartment, as well as make some repairs. Even so defects which they noticed on the home could have been repaired when the Prats visited the home in January, 1977.
The trial judge having been in the best position to determine the demeanor of the *347 witnesses, obviously concluded that because the house appeared in such fine condition when the plaintiffs examined it and since the experts testified that it would be extremely hard for a layman to notice any foundation sinkage the defects were not apparent to a buyer making the type of inspection required by Pursell, supra.
Accordingly, the trial judge found in favor of the plaintiffs after concluding that the house contained redhibitory defects before the sale which were not apparent upon a simple inspection and which rendered the house so imperfect that the purchasers would not have acquired the house had they known of the defect.
We conclude that the trial judge's ruling was not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979).
The plaintiffs answered the appeal and sought an increase in the award in the following particulars:
1. $13,200 for pump piles,
2. $680 for Van Electric Company,
3. $268 shower pan replacement,
4. $232.40 Carrollton Plumbing,
5. $784 Troendle, Inc.,
6. $15,000 Attorney's Fees.
From a reading of the record it is quite obvious that the trial judge did not allow an award for the electrical system repairs, the shower pan replacement and Carrollton Plumbing because the plaintiff failed to prove that the problems existed before the sale. The work on the electrical system was done in November, 1977, six months after the Prats moved in. Furthermore, the plaintiffs did not call to the stand the electrician who performed the work. It is equally certain that the cost for the plumbing work and shower pan replacement are not recoverable as the problem occurred in October, 1979, two and one-half years after they moved in. Aside from the time periods involved the plaintiffs failed to prove by a preponderance of the evidence that these problems were defects existing before the sale.
The cost of the pump pile, the bill for Troendle, Inc., and the award of attorney's fees require serious consideration. In Ashley v. Volkswagen of America, Inc., 380 So.2d 702 (La.App. 4th Cir. 1980), this court discussed the appropriate standard to use when a plaintiff is entitled to a reduction in price, at 705:
"[2] In Menville [v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App.)] we allowed a reduction in the purchase price to the extent of $400.00 plus the cost of repairs. We stated that, where a plaintiff is entitled to a reduction in price, the amount of the reduction should be the `difference between the sale price and ... the fair value as of the time of the sale, if the defects had been known' 300 So.2d 862. Factors to be considered include expert opinion testimony, costs of repairs, or evidence of any other facts bearing on the price to which informed parties would have agreed. Menville v. Stephens Chevrolet Inc., supra; Williamson v. Strange, 323 So.2d 875 (La.App. 2nd Cir. 1975). See also, Couch v. Frichter's Sportsmen's Haven, Inc., 365 So.2d 901 (La.App. 4th Cir. 1978), writ refused 367 So.2d 1185 (La.); Davis v. Davis, 353 So.2d 1060 (La. App. 2nd Cir. 1977), writ refused 355 So.2d 549 (La.1978); Guillory v. Pitre Ford Co., 345 So.2d 1274 (La.App. 3rd Cir. 1977). Ultimately the amount of the reduction is within the court's discretion.
In light of this it appears that consideration should be given to what the parties actually bargained for. This reasoning stems from Buchanan v. McMillan, 311 So.2d 469 (La.App. 4th Cir. 1975) wherein Judge Lemmon in a concurring opinion stated that the plaintiff should not receive an award for the cost of piles since, when he bought the house, he did not bargain for a house with a pile foundation. Thus we hold that the trial judge was correct in disallowing the cost of pump piles.
Again, the plaintiff bargained for and got a wooden floor covered with a carpet. The fact that the carpet was removed and the natural floor refinished did not entitle plaintiffs to be reimbursed for the refinishing, and the trial court, properly disallowed this expense.
*348 Appellees in their request for attorney's fees cite C.C. Art. 2545: The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorney's fees, is answerable to the buyer in damages.
Jurisprudentially this article was discussed in Harris v. Bardwell, 373 So.2d 777 (La.App. 2nd Cir. 1979) at 780:
"The Sellers Liability"
[3] A seller who knows of defects, or who, with reasonable inspection can find obvious or apparent defects, in the product he sells, stands in a similar position as the manufacturer of the product. See CC Art. 2545, Hunt v. Ford Motor Co., 341 So.2d 614 (La.App. 2nd Cir. 1977). The seller does not have to make minute inspection or disassemble the product to look for latent defects and, unlike the manufacturer he is not presumed to know the latent defects in the product he sells. Spillers v. Montgomery Ward & Company, Inc., 294 So.2d 803 (La.1974).
It has been recognized, however, in Busenlener v. Peck, 316 So.2d 27 (La.App. 1st Cir. 1975) that the mere knowledge of a redhibitory defect prior to the sale does not automatically cause the seller to be liable for attorney's fees under C.C. Art. 2545 if his actions taken prior to the sale to remedy the defects were reasonable and he was in good faith in believing that the defect was cured.
When considering the element of attorney's fees, the trial court's reasons for judgment indicate that he could find no "bad faith" on the part of the defendant. Nonetheless, the evidence adduced at trial shows that the defendant was told, as far back as 1974, that the house was sinking and needed shoring. When the defendant was told that the house was sinking in 1974 the defective condition existed. Her knowing this and failing to disclose this information to the purchaser makes C.C. Art. 2545 applicable.
Although, it is obvious that defendant did attempt to keep the home in good repair, her attempts were futile, and she knew or should have known from their recurring nature that the defects were not cured. Thus the trial court erred in not allowing plaintiffs to recover attorneys fees in the amount of $15,000.00 as testified to at the trial by plaintiff Mr. Fernand G. Prat, Jr.
Accordingly, judgment of the trial court is amended to include attorney's fees of $15,000 and in all other respects affirmed.
AMENDED IN PART AND AFFIRMED.