CIACCIO, Judge.
Plaintiffs, the purchasers of a house located at 1236 First Street in New Orleans, filed an action in quanti minoris, against the sellers to recover damages for alleged defects in the residence. After a trial on the merits, the district court awarded judgment in favor of the plaintiff in the sum of $4,840.00.[1] The defendants appeal only from that portion of the judgment which awarded the plaintiffs $4,260.00 for replacement of the roof. We amend the judgment of the district court and affirm.
The sole issue on appeal is the correctness of the amount of the trial court’s award for the roof replacement.
The suit arises out of the following facts:
On December 6, 1977 Dr. and Mrs. David E. Simmons entered into an agreement to purchase a house owned by Dr. and Mrs. Billups P. Percy located in the Garden District of New Orleans, at 1236 First Street. The 130 year old house was a three story Greek Revival structure on a pier foundation. The buyers visited the house on two occasions, prior to the purchase. The parties agreed to pay $264,000[2] as the purchase price of the property. The standard purchase agreement signed by the parties contained several handwritten provisions including the following statement: “Roof to be repaired by seller guaranteed for one year.”[3] Pursuant to this stipulation, the sellers secured the roofing services of William Twickler & Sons, who made an inspection of the roof at 1236 First Street. After completion of the job, Mrs. Percy received an inspection certificate which read as follows: “On inspection of this residence’s roof, we found in our opinion that the asbestos shingle roof needed repairs and repairs in Feb. ’78 have been completed as found necessary.” The certificate was dated March 10, 1978 and signed H. Twickler.
On March 16, 1978 the parties executed the act of sale for the First Street property. Mrs. Simmons inquired, at that time, as to whether the roofing provision of the purchase agreement had been fulfilled. In response to this inquiry Mrs. Percy presented her with the roofing certificate.
Prior to moving into the First Street residence, Dr. and Mrs. Simmons undertook to have the kitchen remodeled and to have a substantial amount of renovation performed on the third floor of the house. About six weeks after the sale, Dr. Simmons was inspecting the attic of the house on a rainy day and he noticed water pouring into the attic from a very large leak in the roof. Dr. and Mrs. Simmons then notified the sellers of the condition. The problem was not rectified between the parties.[4] Dr. Simmons employed Usner Brothers, Inc., a roofer contractor who replaced the roof of the residence at a cost of $7,350.00 and performed additional work which resulted in a total bill for roofing and sheet metal work of $8,520.00.[5]
*1297 The purchasers filed suit against the sellers, seeking a reduction in the purchase price of their home due to alleged redhibi-tory vices in the roof, air condition and heating systems, flooring and foundation. The trial court found that the problems with the foundation did not qualify as red-hibitory defects and that the plaintiffs failed to prove their claim regarding the air condition and heating systems. The court awarded judgment for the plaintiffs in the amount of $4,260.00 for the defective roof and $580.00 for the cost of repairing the water damaged floor under the carpeting. With regard to this award, the trial court reasoned as follows:
The roof presents a different problem. The vendors bound themselves to a clause requiring “Roof to be repaired by seller, guaranteed for one year.” The default here did not involve the one year guarantee of the repairs, if this was the meaning of the words. Rather it was a failure to do the repair plainly required by the contract. Since the substantial leaks were discovered by plaintiffs within a few months of the acquisition, I must infer they were present at the time of the sale, and never repaired by the vendors.
But of course, plaintiffs did not bargain for a new roof, only a “repaired” one. Mr. Usner convincingly explained that no one could tell whether the roof could be successfully patched without removing the shingles and inspecting the felt. As a practical consequence, the only feasible method of repair was replacement.
As indicated in Prat v. Heymann, [410 So.2d 343] # 12166, Feb. 9, 1982, 4th CCA, quoting Ashley v. V.W. of America, 380 So.2d 702 (4th CCA, 1980), the amount of any reduction should be the difference between the sale price and the fair value as of the time of the sale, if the defects had been known. Ultimately, say these cases, the amount of the reduction is within the court’s discretion.
The fairest resolution in this case would be to divide the replacement expense between the parties. Accordingly, the sale price should be reduced by one-half of the practical cost to cure, or $4,260.00.
******
The $580.00 cost of repairing the water damaged floor under the carpeting must plainly be included in the reduction of the price.
Judgment will be rendered accordingly.
******
Appellants contend that the award is excessive and results in an unjust enrichment to the appellee. They reason that the parties bargained for a repaired roof with a one year guarantee and they got a new roof with a twenty-five year guarantee. Therefore, they postulate that the cost of the roof ($7,350.00)[6] should be divided by the number of years in the warranty (25 yrs), hence the plaintiffs should have been awarded the sum of $294.00. We do not agree with this reasoning.
The purchaser has the burden of proving the amount of reduction, with reasonable certainty. Ashley v. Volkswagen of America, Inc., 380 So.2d 702 (La.App., 4th Cir., 1980). The trial judge is afforded much discretion in determining the amount of the reduction in purchase price. Prat v. Heymann, 410 So.2d 343 (La.App., 4th Cir., 1982); Verlander v. Hoffer, 351 So.2d 229 (La.App., 4th Cir., 1977); writ den. 353 So.2d 1037. In an action for quanti minoris the measure of damages is the difference between the sales price and the fair value of the object as of the time of the sale, if the defect had been known. Prat v. Heymann, supra; Slagle v. Morgan, 410 So.2d 371 (La.App., 4th Cir., 1982); Ashley v. Volkswagen of America, Inc., supra. That is, the amount of recovery is the amount needed to convert an unsound structure into a sound one. Verlander v. Hoffer, supra. *1298 Some factors to be considered in making this determination are the expert opinion testimony, costs of repairs and any other facts bearing upon the price to which informed parties would agree. Prat v. Hey-mann, supra; Ashley v. Volkswagen of America, Inc., supra. Ultimately the court must ascertain what the parties actually bargained for and attempt to do justice to all parties without unjustly enriching one party at the expense of the other. See: Prat v. Heymann, supra; Verlander v. Hoffer, supra.
In the instant case, the plaintiffs purchased an old house with a roof which was at least twenty (20) years old and which had experienced some deterioration. The parties agreed that the “roof [was] to be repaired by sellers guaranteed for one year.” The trial judge found that the roof had not been repaired and “the only feasible method of repair was replacement.” The record clearly supports the finding that the roof had not been repaired. Dr. Simmons and his wife testified that within six weeks of the act of sale leaks were discovered in the roof of their residence. Dr. Percy and his wife acknowledged being told about the problem with the leaks and contacting their roofer about the leaks. The roofer, William Twickler, testified that if he knew of leaks at the time of his inspection he would have repaired them, but he could not remember whether anyone told him about any leaks nor the extent of the work he did on the house. The plaintiff’s roofer, Charles Usner, testified that he did find several leaks in the roof.
Likewise, the evidence supports a finding that the only feasible method of repairing the roof was replacement. Dr. Simmons testified that his roofer could not repair the roof because the felt underneath was bad. Although the plaintiff's roofer, Charles Us-ner, testified that he was not called upon to repair the roof, but rather to replace it, he admitted that the roof had several leaks and that sometimes leaks cannot be stopped. He also stated that if repairs were possible he would only guarantee those specific areas of repair. He further testified that the only way to tell whether the leaks could be repaired would be to lift the shingles and inspect the tarpaper for cracking and a dried, porous condition. However, the witness concluded that it was his expert opinion that the work done on the roof had to be done.
The replacement of the roof provided the parties with the one year guarantee for which they bargained.[7] However, it also provided them with a new roof for which they did not bargain. Since the house was purchased with an old roof some deterioration could be anticipated, and to allow full recovery for a new roof would constitute unjust enrichment. Slagle v. Morgan, supra; Verlander v. Hoffer, supra. Accordingly, the trial judge, in an attempt to arrive at a figure which would fairly represent the amount of the reduction, after considering all the relevant factors, chose to award one-half of the amount expended for the replacement of the roof. This computation was within the sound discretion of the trial judge and we find no manifest error with this approach. However, the trial judge used the wrong figure for the amount which reflected the replacement value. He erroneously used the sum of $8,520, which was the amount of replacement of the roof plus additional roofing and sheet metal work. The proper figure for the replacement of the roof was $7,350.00 (See: Exhibits P4, D-l). Therefore, the proper award to the plaintiff for reduction of the purchase price due to the defective roof shall be $3,675.00, that is, one half of $7,350.00.
For the reasons assigned, the judgment of the district court is amended to award the sum of $4,255.00 to Dr. and Mrs. David E. Simmons and against Dr. and Mrs. Bill-ups P. Percy with interest from judicial demand and for all costs. In all other re *1299 spects the judgment is affirmed, at defendant’s cost.
AMENDED AND AFFIRMED.

. The sum of $4,840.00 consists of $580 cost of repairing the water damaged floor and $4,260.00, which is one-half of the cost of repairing the defects in the roof.

. The original asking price was reduced from $265,000 in order to compensate for an inoperative heating and/or cooling system in the residence.

. This provision appeared at lines 3-4 of the purchase agreement. Exhibit PI.

. The testimony is in conflict as to what transpired after the discovery of the leak. Dr. Simmons contends that he notified the sellers of the leak and he was told that they had fulfilled their agreement. He stated that he then called Mr. Twickler who refused to come see about the problem. Dr. Percy testified that his wife received a call from the purchasers about the roof. He vaguly remembered calling Mr. Twickler, who went to see about the roof and reported to Dr. Percy that there had been much ado about nothing.

.The additional work consisted of the installation of roofing and gutters, with screens, on the garage at a cost of $825.00; screening of the remaining gutters, cementing loose bricks on *1297 the chimney and replacing cracked weatherboards on the rear gable at a cost of $345.00.

. The appellants note that the trial judge used the sum of $8,520.00 which was the cost of the roof replacement, plus other work. Rather they contend that the proper figure to be used was $7,350.00, the cost of the roof replacement alone.

. The roofing contract (Exhibit D-l) provides: “Our work is guaranteed for (1) year against defective workmanship and materials. Manufacturer will furnish you with a 25-year warranty on the new roofing shingles.”