ARMSTRONG, Judge.
This appeal results from a suit in quanti minoris in which plaintiffs seek a reduction in the sales price of their home. Plaintiffs claim that the composition of the roof, gutters and drains was misrepresented to them and that there were hidden defects in the swimming pool and in the attached porch which rendered them unsafe for the purpose for which they were intended.
Plaintiffs purchased their home, located at 1213 Third Street, New Orleans, Louisiana, on February, 1, 1978 from the Succession of Alvin Hero. The house, a hundred and twenty year-old Garden District mansion, was originally listed by the relator, Gertrude Gardner, Inc., for $450,000. The house was described in Gardner’s sales information sheets as having an “ornamental slate roof” and “all copper drains and gutters.” After lengthy negotiations, plaintiffs purchased the house for $334,000.
Shortly after purchase, plaintiffs discovered that the swimming pool needed re-plastering, a new filter system, a new pump motor and other repairs. They estimated expenditures of $4,700 in order to bring the pool up to standard. Although the sellers authorized the purchase of a new pump motor there is no evidence that *407 they ever compensated plaintiffs for its purchase. The defendants refused to pay for any other needed pool repairs.
In July of 1978 plaintiffs learned that the roof shingles were composed of an asbestos imitation slate material rather than natural slate. They also discovered that some of the drains and gutters servicing the roof were galvanized steel instead of copper. The estimated cost at that time to replace the roof with natural slate and to install new copper drains and gutters was $29,690.
Plaintiffs filed suit on January 24, 1979 seeking a reduction in the selling price or damages totalling $34,390 relative to the defects in the roof and pool. On April 1, 1981, plaintiffs filed an amending and supplemental petition alleging that hidden defects in one of the porches necessitated its replacement at a cost of $12,341.95. Plaintiffs maintain that had they known of the true composition of the roof and gutters, and of the hidden defects in the porch and pool they would not have purchased the house for the amount paid.
The defendants subsequently filed a third-party demand against Gertrude Gardner, Inc., alleging that if any misrepresentation existed at the time of the sale it was through the fault of the real estate company or its agents. •
The trial court, in judgments rendered on June 28, 1985 and on October 11, 1985 awarded plaintiffs $4,594.55 for repair of the pool, and $12,341.95 for the repair of the porch. The court held that plaintiffs' written acceptance of the roof and waiver of the inspection contingency clause during the sale negotiations precluded any subsequent reduction in the sales price. The court dismissed all other claims, finding no misrepresentation on the part of the sellers or Gertrude Gardner, Inc. Both plaintiffs and defendant appeal. We affirm.
In their first assignment of error defendants maintain that the trial court erred in awarding $4,594.55 for pool repairs. They argue that the pool contained no hidden defects at the time of purchase nor was the pool unfit for use since it had been used prior to the purchase and was used after the sale by the plaintiffs without the benefit of the repairs. Defendants argue that if the pool did contain defects they were readily apparent upon Reynoir’s initial inspection and thus cannot support a claim for reduction. LSA-C.C. Art. 2521.
The Louisiana Civil Code establishes certain remedies which a buyer may pursue upon discovery that the object he has purchased contains some hidden vice or defect. He may seek an action in redhibition to rescind the sale when the defect in the thing sold renders it absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the defect. LSA-C.C. Art. 2520. Where the defect in the thing sold renders it useless or unsuited for its intended purpose or diminishes its value, or where the object lacks some quality that it was purported to possess, the buyer may seek either a redhi-bition or a reduction in the purchase price through an action in quanti minoris. LSA-C.C. Arts. 2541 and 2542; Wiltz v. Dixie Auto Sales, Inc., 315 So.2d 811 (La.App. 3rd Cir.1975); Sikes v. B & S Supply, Inc., 164 So.2d 81 (La.App. 2nd Cir.1964). An action in quanti minoris is governed by the same statutory rules which apply to actions in redhibition. LSA-C.C. Art. 2544; Gonzales v. Schultis, 427 So.2d 669 (La.App. 4th Cir.1983).
In order to be successful in a suit for redhibition or quanti minoris, a plaintiff must prove that the thing contained a hidden defect, that the defect existed at the time of the sale, and that the defect could not have been discovered by ordinary inspection. He need not prove the cause of the defect. Millspaw v. Knight, 430 So.2d 1207 (La.App. 1st Cir.1983); Broussard v. Breaux, 412 So.2d 176, writ denied 416 So.2d 115 (La.App. 3rd Cir.1982); Gonzales v. Schultis, supra.
Although the defendants’ family and friends used the pool until early September 1977, the pool remained unused and unmaintained between September 1977 and the sale on February 1, 1978. Plaintiff Gus Reynoir testified that he had the pool inspected by Harold Brouphy Jr., owner of Pelican Pool and Patio Specialtes, Inc. on *408 January 13, 1978, two weeks prior to the act of sale. Reynoir stated that he couldn’t tell whether repairs were needed or not because the pool was “black and greenish” and the bottom was covered with leaves and other debris. Brouphy informed Rey-noir at that time that he suspected that the pool may need replastering and other repairs, but that the pool had to first be drained and cleaned in order to determine the extent of deterioration, if any. After draining and cleaning the pool, Brouphy notified Reynoir on February 7, 1978, two weeks after the act of sale, that the pool needed replastering. He stated that the deterioration had been caused by a chemical imbalance in the water which resulted in a leaching of the plaster into the pool water. He reported that the deterioration was so severe that the pool presented a health hazard to swimmers.
Reynoir moved into the house in July of 1978 and then contacted Brouphy to report that the pool was leaking water in the. patio area. Upon inspection Brouphy discovered that the filter backwash line was broken beneath the patio causing water to seep through the concrete creating a wet spot on the patio. This condition had apparently existed for some time. Estimates were submitted for this repair as well as for rewiring and other maintenance items.
At trial Brouphy testified that although a layman might have been able to detect some plaster flaking on the side walls of the pool, only an expert would have been able to determine the deterioration to the floor of the pool prior to draining.
That a defect is easily ascertainable by an expert upon examination does not mean that the defect is apparent upon simple inspection. The reasonably prudent buyer is not held to have the knowledge and specialized training of an expert, nor is he required to deface the thing purchased while inspecting it. Fraser v. Ameling, 277 So.2d 633 (La.1973). Foreman v. Jordan, 131 So.2d 796 (La.App. 3rd Cir.1961).
The preponderance of the evidence clearly establishes that the pool contained hidden defects at the time of sale which were not readily apparent upon inspection by a non-expert. Broussard v. Breaux, supra.
Defendants argue that the award of $4,594.55 is a “mystial” calculation on the part of the trial court which is not supported by the record. We disagree.
In an action for the reduction of the purchase price, the amount to be awarded is the difference at the time of the sale, between the value of the thing sold in its defective condition and its value as warranted. Such a difference with respect to the sale of realty is not always readily and easily ascertainable. Thus the allowable diminution is the amount necessary to convert the unsound structure into a sound one. Lemonier v. Coco, 237 La. 760, 112 So.2d 436 (1959). Smith v. Chang, 467 So.2d 1277 (La.App. 4th Cir.1985). In any quanti minoris case it is the purchaser’s burden to prove with reasonable certainty the amount to which the price should be reduced. Ashley v. Volkswagen of America, Inc., 380 So.2d 702 (La.App. 4th Cir. 1980).
The record in this case reflects that the plaintiffs proffered pool repair bills and repair estimates in the amount of $4,834.65. The parties stipulated at trial that the amount sought would not include items or services needed for the ordinary on-going maintenance and upkeep of the pool. The court excluded these maintenance items and awarded the following:
I. Actual expenditures:
a. Stuart Electric -
(2/13/78)-Parts and labor.$ 527.51. for rewiring pool equipment
b. Pelican Pool & Patio Specialties
(1/13/78) - Drain and clean pool_$ 250.00
24" fiberglass sand filter and installation .$ 450.00
Repair of fill spout.$ 10.00.
(2/22/78) 1 1/2 h.p. pump .$ 386.04.
and motor, plus installation
Total Labor and Material.$1,624.55.
II. Estimates of needed repairs:
a. Pool replastering.$2,685.00.
b. Material and labor to.$ 285.00.
replace backwash line
Total estimated costs.$2,970.00.
Total costs.$4,594.55.
*409 These costs are fully supported by the record and justify the trial court’s award of $4,594.55. Simmons v. Percy, 423 So.2d 1295 (La.App. 4th Cir.1982) writ denied 430 So.2d 75 (La.1983).
Defendants also argue that the trial court erred in awarding plaintiffs $12,-341.95 for the repair of an attached porch and in failing to find, on rehearing, that plaintiffs’ claim for these damages had in fact prescribed.
Sometime after the purchase of the house Gus Reynoir attempted to have a large attached porch repainted. In sanding and preparing the surface the workman discovered that the wood beneath the old paint was rotten. Reynoir then hired Hans Hansen to inspect and replace all of the damaged wood prior to repainting. At trial, Hansen testified that very little of the damage could be detected from simple inspection since the exposed surfaces were covered by several layers of paint and the sills and joists were hidden by the fascias. As a result of the deterioration, 75% of the porch, including the steps, handrails, sills and joists, had to be replaced at a cost of $12,341.95. Hansen testified that the deterioration had resulted from water damage over the past 8 to 10 years. Although Reynoir had himself inspected the foundation prior to the sale he stated that his view of the steps and the wood underneath the porch was blocked by a brick retaining wall.
The trial court found that
.... Even though the porch had been replaced or repaired as a result of Hurricane Betsy, the Court is of the opinion that the porches on the property made the subject of the litigation were rotten to the extent that their continued use would constitute a hazard to the user thereof, none of which was readily discernible or subject to discovery upon reasonable inspection, and as such constituted a hidden defect.
The court also found that the seller was in good faith and did not know of any defect in the porch on the date of sale.
From the evidence presented we find no error in the trial court’s conclusion that the porch contained latent defects at the time of sale but that the sellers were in good faith. Thus the purchasers were entitled to a reduction or damages sufficient to cure the defects. Webb v. Hughes, 408 So.2d 1183 (La.App. 4th Cir.1982) writ denied 413 So.2d 497 (La.1983); Broussard v. Breaux, supra; Kolwe v. Owens, 357 So.2d 1333 (La.App. 4th Cir.1978).
The defendants maintain, however, that plaintiffs’ cause of action as to the porch had prescribed prior to the filing of the amended petition, thus barring recovery. In answer, the plaintiffs submit that although the amended petition was filed more than one year after discovery, the claim arises out of the same conduct, transaction or occurrance as gave rise to the original suit and therefore the amendment “relates back” to the original date of filing. LSA-C.C.P. Art. 1153.
When a seller is in good faith a buyer’s redhibitory action must be brought within one year from the date of sale. LSA-C.C. Art. 2534 and 2544. In this case the house was purchased on February 1, 1978. The original suit was filed on January 24, 1979 and the amended petition on February 24, 1981. The trial court found the sellers to be in good faith therefore prescription would ordinarily be controlled by C.C. Art. 2534 which limits the institution of the buyer’s redhibition action to one year from the sale. However, we find merit in plaintiffs’ argument that C.C.P. Art. 1153 is instead applicable.
C.C. P. Art. 1153 states:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
The Louisiana Supreme Court has established the general policy to be followed in interpreting C.C.P. Art. 1153. In Gunter v. Plauche, 439 So.2d 437 (La.1983), the Court stated:
It is well established that art. 1153 permits amendment despite technical *410 prescriptive bars where the original pleading gives fair notice of the general fact situation out of which the amended claim arises. Baker v. Payne and Keller of Louisiana, Inc., 390 So.2d 1272 (La.1980). “Where there is some factual connexity between the original and amended assertions, together with some identity of interest between the original and supplemental party, amendment should be allowed.” Baker, 390 So.2d at 1275.
4s * * ⅜ * $
.... Article 1153 requires only that the amending petition’s thrust factually relate to the conduct, transaction or occurrence originally alleged. Gunter, 439 So.2d at 440.
In this case, the parties involved in both the original and amended petitions are the same. The theory of recovery, i.e. an action in quanti minoris, is the same for both petitions. The transaction or occurrence giving rise to the original demand or object of the suit, the purchase of a house containing hidden defects, remained unchanged by the amendment. Plaintiffs’ original pleading was sufficient to provide notice that defendants were being sued because of latent defects in the object of the sale. The latent defects in the porch attached to the house are factually connected with the alleged defects in the roof and swimming pool since the sale encompassed the property as a whole. We therefore hold that the claim presented in the amending petition arose out the same transaction of sale so as to relate back to the date of filing of the original petition. Fiorita v. Electric Coal Co., 460 So.2d 4 (La.App. 4th Cir.1984). Gunter v. Planche, supra. See also: Town of Winnsboro v. Barnard and Burk, Inc., 294 So.2d 867 (La.App. 2d Cir.1974).
On cross-appeal plaintiffs maintain that the trial court erred by failing to award a reduction in price with respect to the roof, and by failing to award reasonable attorneys’ fees. They do not argue that the roof was defective in that it was damaged or unfit for use, but rather that the sellers misrepresented the roof to be of “ornamental slate” with “all copper drains and gutters,” when in fact none of the roof was slate and only some of the drains and gutters were copper.
The trial court found no evidence of misrepresentation on the part of the Hero family nor on the part of Gertrude Gardner, Inc. “When there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error.” Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). The evidence in this case furnishes a reasonable factual basis for the trial court’s finding of lack of misrepresentation relative to the sale of plaintiffs’ home. Since there has been no showing of manifest error, we will not disturb the trial court’s conclusion.
The evidence established that the original slate roof was destroyed during Hurricane Betsy in 1965, at which time it was replaced with high-quality mineral fiber shingles which had a slate-like appearance. The experts agreed that the roof construction contained ornamental gables, ornamental iron work and brackets, and was trimmed with what appeared to be the original ornamental terra-cotta roofing tiles. The experts likewise agreed that the composition of the roofing shingles was readily apparent upon simple inspection, and the fact that it was composed of synthetic shingles rather than natural slate could be observed from the street level as well as from other vantage points throughout the structure. The major drains, gutters and incline valleys were found to be of copper. The front coping and some of the downspouts and flashings were found to be of galvanized steel; however, these were covered with paint and their composition was not readily apparent. The experts testified that it would have been necessary to scrape some of the paint off of the gutter or to apply a magnet in order to determine their composition.
*411 The original offer to purchase contained a standard roof inspection contingency clause. In order to facilitate the acceptance of his bid, Gus Reynoir executed the following letter to Gertrude Gardner, Inc.:
Gentlemen:
This is to advise you that the roof inspection^) as called for on the Purchase Agreement dated August 29, 1977 and accepted August 29, 1977 for 1213 Third Street, New Orleans, La. has proved to be satisfactory and [t]his contingency may be deleted as of this date September 6, 1977.
9/6/77
G. Reynoir
Purchaser
Plaintiffs admit that Gus Reynoir never personally inspected the roof, nor caused it to be inspected by experts prior to sale, despite the waiver of contingency. Gus Reynoir further admitted that he probably would have purchased the house, now valued at approximately $1,000,000, even if he had known the true composition of the roof and drains at the time of the sale.
The trial court was of the opinion that by his waiver of the roof contingency, the plaintiff, in effect, accepted the roof in the condition it was in at the time the sale was negotiated, thus precluding a claim for reduction in price. We agree. Plaintiff cannot waive a right in order to gain a sales advantage and then later try to reclaim that right after he has obtained the advantage and the object of sale. Although plaintiff may have believed the roof to have certain qualities which it did not in fact possess, he nonetheless stated in writing that he had inspected the roof and that the inspection proved satisfactory. We will not now hold defendants liable for an error which plaintiff could have easily discovered had he chosen to do so.
Lastly, plaintiffs complain that the trial court erred ⅛ failing to award reasonable attorney’ fees. Although the judgment of the lower court is silent on this point we find no error since attorney fees in a redhibition or quanti minoris action are recoverable only when it has been shown that the vendor had prior knowledge of the latent defect but did not reveal the defect to the vendee. C.C. Art. 2545; Millspaw v. Knight, supra; Bain v. Anderson, 427 So.2d 60 (La.App. 4th Cir.1983). In the instant case, the record supports the lower cout’s conclusion that the sellers did not know of the hidden defects in the porch and the swimming pool prior to the sale. Thus the purchasers were not entitled to attorney fees under C.C. Art. 2545. Estopinal v. Bourshie, 420 So.2d 749 (La.App. 4th Cir.1982).
For the foregoing reasons, the judgment of the lower court is affirmed.
AFFIRMED.
WILLIAMS, J., dissents.