325 So.2d 844 (1975)
James G. MAGUIRE
v.
Joyce R. MASINO.
No. 6978.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1975.
Concurring Opinion On Denial of Rehearing November 11, 1975.
*845 Pitard, Pitard & Porobil, Gregory M. Porobil and James G. Maguire, New Orleans, for plaintiff-appellee.
Hammett, Leake, Hammett, Hayne & Hulse, New Orleans, James H. Minge, for third-party defendant-appellee, A & M Pest Control Service, Inc.
Dillon & Williams, William S. Marshall, Jr., New Orleans, for defendant, third party plaintiff-appellant, Joyce R. Masino.
Before LEMMON, STOULIG and SCHOTT, JJ.
LEMMON, Judge.
This is an action in quanti minoris filed by James Maguire, alleging that a residential building which he purchased from Miss Joyce Masino was infested with termites *846 at the time of the sale and demanding a reduction in the purchase price. By third party petition Miss Masino sought indemnification from A & M Pest Control Service, Inc., who had contracted with Miss Masino to furnish termite control service.
Miss Masino has appealed from a judgment which ordered a reduction in the purchase price, while granting only partial indemnification.
In 1971, after she had lived in the house for twenty years, Miss Masino noticed termites in the laundry room and called A & M, who inspected the premises and informed her that the termites were only swarmers which are not the type that cause damage. Nevertheless, Miss Masino executed a two-year termite contract with A & M on February 19, 1971, and A & M conducted its initial treatment and inspection shortly thereafter.
In February, 1972, about a month after A & M had conducted its annual inspection and retreatment under the contract, Miss Masino again discovered termites in the laundry room. A & M retreated the house and informed her these were also nondestructive swarmers.
On February 19, 1973 the contract between Miss Masino and A & M was renewed for another year, and shortly thereafter she accepted Maguire's offer to purchase the property which was "(p)redicated on a satisfactory termite inspection to be furnished by seller." A & M performed its annual inspection and treatment on March 7, 1973 and issued a certificate that there was no visible evidence of active termites. The act of sale was passed on April 25, 1973.
As to events thereafter, Maguire testified: He moved into the house in May and immediately painted all the walls and woodwork, but saw no evidence of termite infestation or damage. In the middle of June he noticed a few "insects" on some nights in an upstairs bedroom but realized no cause for concern. In the middle of July (less than three months after the sale) he noticed a tremendous swarm of termites throughout the house and called Miss Masino, who told him of her previous experience with termites in the laundry room. He did not contact A & M or any other termite contractor at that time, because he could not then financially afford to purchase a contract, but apparently applied a chemical spray himself. In February, 1974, while renovating the upstairs bedroom, he noticed rippling in the wall paneling and upon probing discovered live termites. He again applied a chemical spray and called Miss Masino. One of them notified A & M, who inspected the premises but denied responsibility because the contract with Miss Masino had expired. He then filed this suit.
On June 1, 1974 Vernon Sanchez, a termite inspector with 20 years experience for another company, examined the house and found live termites and considerable damage. Maguire then entered into a termite contract with Sanchez's company.
On the question as to whether termite infestation existed at the time of the sale, Sanchez opined that if termites swarmed in large numbers within one to three months of the pertinent date, infestation had probably occurred as of that date. Distinguishing between nondestructive swarmers and destructive workers, Sanchez also stated that workers are normally present (although rarely visible) when swarmers are observed. Moreover, Sanchez identified the termites as Formosan, an aggressive variety which causes damage that becomes visible in a relatively short time, perhaps three to five years.
A & M's manager testified that swarmers observed outside a building could come from anywhere in the area, but when swarmers are observed inside, an effort should be made to determine the origin of infestation. He stated that when swarmers are detected, workers are possibly (but not necessarily) also present.
*847 The trial court, by ruling in plaintiff's favor, apparently accepted his statement that he found termites swarming in large numbers within three months of the sale. Once this fact is proved, the expert testimony (that swarming within three months of the sale indicates the probability of infestation at the time of the sale, and that damage generally becomes visible within three to five years after infestation) is sufficient to establish the probability that the infestation existed at the time of the sale. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance when the proof, taken as a whole, shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
Since plaintiff proved a defect sufficient to diminish the value of the thing sold (C.C. art. 2541), and since that defect was not discoverable by simple inspection at the time of the sale (C.C. art. 2521), plaintiff is entitled to a reduction of the purchase price and to judgment against Miss Masino. Fraser v. Ameling, La., 277 So.2d 633 (1973).
The measure of recovery in an action in quanti minoris involving a building is the amount necessary to convert the unsound structure to a sound one. Fraser v. Ameling, supra. All counsel stipulated that the cost of repairing the damage to the house caused by termite infestation was $385.00. Plaintiff additionally paid Sanchez's exterminating company $340.00, which included the cost of eradicating the existing termites as well as of periodic treatment with a guarantee against reinfestation for a two-year period.[1]
Eradication of the live termites was necessary to prevent continuing damage from the original latent defect, the termite infestation, and to rid the structure of this defect. Although Sanchez could not separate the cost of eradication from the cost of any other benefits under the contract, we note that the contract could thereafter be renewed at a cost of only $34.00 per year. We accordingly award plaintiff a total of $725.00, which will reimburse him for both the cost of repairs and the cost of eradication. This sum substantially represents the difference between the sale price and the price a reasonable buyer and seller would have agreed upon had they known of the defect.
Inasmuch as we have concluded the defect existed at the time of the sale, when Miss Masino's contract with A & M was still in effect, we further conclude that Miss Masino is entitled to indemnification from A & M.[2] Termites were found in large numbers at least once in each of the years 1971, 1972, 1973 and 1974. Except for the first swarming, all of these findings occurred during the time A & M undertook to protect the property and to prevent termite damage. Furthermore, Miss Masino testified that she maintained the area free from trash, leaks, faulty plumbing and other factors contributing to infestation and otherwise complied with her obligations under the contract. These considerations and the totality of the evidence indicate the probability that A & M failed to perform properly its obligations under the contract. Accordingly, Miss Masino is entitled to recover from A & M the loss that she incurred because of the termite damage caused by A & M's failure.[3]
*848 For these reasons, the judgment of the trial on the principal demand is reduced to the sum of $725.00, and the judgment on the third party demand is increased to the sum of $725.00. As amended, the judgment is affirmed.
Amended and affirmed.

OPINION IN DENIAL OF APPLICATION FOR REHEARING
LEMMON, Judge (concurring).
A & M's application for rehearing contends that its contract lapsed prior to the discovery of any visible termite damage to the premises and that since any liability to Miss Masino is solely under the contract, our judgment on the third party demand was erroneous, especially in awarding indemnification for the cost of employing another exterminating company to provide future inspection and treatment services.
The treatment necessary to eradicate the termites did also have a long-term effect of preventing reinfestation for some period of time. Nevertheless, the fact that the owner received a future benefit from the treatment is relatively insignificant, since the principal purpose of this particular treatment was to eradicate the existing active termite infestation, the cause of the damage.[1]
A & M also contends the contract terms limited its responsibility to new damage discovered during the term of its contract. The contract provided:
"The Termite Contractor shall be responsible only for new damage to visible portions of the foundations, sills, joists, plates and sub-floor where an active termite infestation is discovered 6 months or more after completion of initial treatment."
The evidence showed the damage to be "new", that is, damage which occurred after the inception of the contract. Furthermore, the active termite infestation was discovered more than six months after completion of the initial treatment. Therefore, although plaintiff did not discover the rippling in the wall paneling until after Miss Masino had sold the property, A & M was nevertheless liable to Miss Masino under the contract for such damage.
Finally, A & M contends damage to the garage was clearly excluded. The contract did exclude "fences, garage and other outbuildings", but the evidence suggests this garage was part of the main structure. Since A & M failed to prove the garage was a detached outbuilding, and since the burden is on the party relying on a contractual exclusion to prove facts necessary to establish the exclusion, A & M failed to establish the applicability of this exclusion.
NOTES
[1] R.S. 40:1269 requires that a pest control operator, contracting to control or eradicate termites, guarantee for two years the performance of the terms of the contract.
[2] A & M did not appeal from the judgment, and its liability to the extent of that judgment ($300.00) is not at issue on appeal.
[3] We reject A & M's partial defense that its contract excluded the garage. The evidence is not clear as to whether the garage is part of the house or a detached accessory building, which could influence determination of the partial defense. Furthermore, the damage to the garage comprised only an inconsequential amount of the total repair estimate.
[1] The annual inspection, required by the contract, also conferred a benefit which is deemed relatively insignificant to the principal purpose of the treatment.