CUTRER, Judge.
This suit was brought for a reduction of the price of an immovable. The plaintiff, Nancy W. Olmstead, purchased a house from defendants, Gabriel Perrio, Jr., and Hazel Duhon. Plaintiff subsequently filed suit seeking a reduction in price alleging that the heating and air conditioning unit was defective and that extensive deterioration necessitated replacement of the sills, floor joists and subflooring of the house. The trial court rendered judgment in favor of defendants dismissing plaintiff’s suit. We reverse.
The issues on appeal are:
(1) Whether the air conditioning unit was defective and, if so, whether such defect would have been revealed by a simple inspection;
(2) Whether the substructure (sills, floor joists and subfloor) of the house was defective and, if so, whether such condition would have been revealed by a simple inspection;
(3) Whether the plaintiff waived the implied warranty of fitness insofar as the substructure was concerned; and
(4)In the event of recovery, whether plaintiff should be awarded attorney’s fees.
After the death of her husband, plaintiff moved from the state of Michigan to Lafayette, Louisiana. After her arrival she began looking for a house to purchase. The defendants had their house for sale for the price of $45,000.00. After looking at the defendants’ house, plaintiff decided to purchase same. On August 24, 1979, plaintiff signed a purchase agreement which was on a form bearing the name of Don Gautreaux Realty, Inc. Apparently this was the agent handling the transaction.
On September 13, 1979, plaintiff and defendants executed the act of sale of the house. She moved into the house and during the following month, October 1979, the air conditioning and heating unit quit functioning. Approximately two weeks after the sale was consummated plaintiff had a termite inspector to examine the house for the presence of termites. No termite damage was found but the inspector reported to plaintiff that there was extensive deterioration of the sills, floor joists and the sub-floor. The defendant, Gabriel Perrio, Jr., was notified of the air conditioning and substructure problems but refused to remedy same. Plaintiff then filed suit for a reduction of the price of the house, for the amount necessary to replace the air conditioning and heating unit, and the repair of the substructure.
The general principles governing the disposition of the issues herein are set forth by this court in the case of Hunter v. Wilson, 355 So.2d 39, 41 (La.App. 3rd Cir. 1978), writ den., 357 So.2d 1154 (1978), where this court stated as follows:

“The law provides that the seller warrants the thing sold against hidden defects. LSA-C.C. arts. 2475, 2476. Hidden defects are those which cannot be discovered by simple inspection. LSA-
*597
C.C. art. 2521. If the thing sold has a hidden defect which renders it either absolutely useless, or its vice so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice, the purchaser may avoid the sale. LSA-C.C. art. 2520. Whether the defect in the thing sold be such as to render it useless, or whether it be such as merely to diminish its value, the purchaser may limit his demand to the reduction of the price. LSA-C.C. arts. 2541, 2542, 2543. In the instant suit plaintiff has demanded only a reduction of the price.”

We will examine the issues herein with those general principles in mind.
DEFECTIVE HEATING AND AIR CONDITIONING UNIT
Plaintiff testified that in October 1979, shortly after she purchased the home, she noticed there was a water leak requiring her to put buckets under the furnace area to catch the water.
Plaintiff called a service company, Marine Electric, to check the unit. This service company sent Barry Duplechain, an employee who operated the air conditioning division of the business. Mr. Duplechain testified that upon examination of the heat exchanger, he found a hole in same. Also, he found evidence of a leak in the evaporator coil which would also cause damage to the unit. This witness stated that the defective condition of the unit had existed for at least a year. As a result of the conditions that he found, Mr. Duplechain removed the existing unit and installed a new one. The cost of this replacement was $2,490.00. The testimony of Mr. Duplechain was the only expert testimony presented in regard to the condition of and the replacement of the air conditioning and heating unit.
Defendant, Gabriel Perrio, Jr., testified that he had never had any trouble with the air conditioning unit. He did say that, approximately once a year, he would have to unplug the drain line that drains the water discharged from the unit.
The evidence is clear that the air conditioning unit was defective at the time of sale. The defect was such that the unit had to be replaced by a new unit. The plaintiff would be entitled to a reduction of the price of the home by the amount expended for replacement of the unit unless the defect could have been discovered by a simple inspection. Hunter v. Wilson, supra; LSA-C.C. art. 2521.
Mr. Duplechain stated unequivocably that a layman could not have ascertained the existence of the hole in the heat exchanger by a casual inspection. Also, he stated, that even though the carpet in the unit room showed evidence of water damage, it would be difficult for a layman to determine the cause of such water damage. This testimony is undisputed and reflects that plaintiff could not have discovered the defective condition of the unit by a simple inspection. Under the provisions of the legal principles cited at the beginning of this discussion, the unit contained a redhibitory defect and plaintiff would be entitled to a reduction in price accordingly.[1] The trial court erred in not allowing this reduction of purchase price.
DEFECT OF SUBSTRUCTURE

(Sills, Floor Joists and Subfloor)

The plaintiff testified that before she signed the purchase agreement she had noticed that the floor was sinking in one area. She pointed this out to Gabriel Perrio, Jr., and he told her that a pillar was leaning and a sill needed changing. He stated that *598 he would make the repairs and level the floor. After the sale was executed, defendant did change the sill and level the sinking area. Following this, plaintiff called a termite inspector to examine the house for the existence of termites. Such inspection was made. The inspector found no termites but notified the plaintiff that the sills, floor joists and subfloor was deteriorated or rotted.
In lieu of any expert testimony on the condition of the substructure, the attorney for the plaintiff introduced two reports and estimates. The defendants’ attorney agreed that, if the persons signing the reports and estimates were called, their testimony would be in accordance with such reports.
The first report and estimate was made by Able J. Walker. The report contains the letterhead of Acadian Home Improvement. The pertinent part of this report reads as follows:

“At the request of John Rixie Mouton (Attorney) an inspection was made at the above address to ascertain the condition of the home on this property.

“Inspection reveals that approximately eighty percent of the wood sills, floor joists and subflooring is dry rotted. Sills and floor joists are sagging causing an unlevel floor.

“This house will have to have all the damaged sills, floor joists and subflooring replaced and the entire floor area returned to a level condition. Doing this will require removing all finish [sic] floors and installing new floors if present floors can not be salvaged.” * * *

“Repairs of this type are very expensive and it is estimated that the type of repairs needed to place this house in a good safe condition will cost approximately Twenty Five Thousand Dollars ($25,000.00).

“The heating and cooling system was found, by others, to be defetive [sic] and has been replaced. NOTE!! This condition did not occur in the last two years; this is caused by improper cross ventilation in the crawl space under the house. It is my recommendation that proper ventilation be installed in the crawl space under this house.”
The second report was signed by Gregory M. Pickett, Pragmatic Builders, Lafayette, Louisiana. The pertinent part of this report reads as follows:

“I found the area under the house to be quite damp. This was not due to any recent rainfall due to the fact that no measurable rain had fallen in well over two weeks. The moisture under the house was present due to inadequate ventilation of the crawl space under the house. The entire circumference of the house is sealed by either a brick veneer wall or carport slab. Only three small access holes on one side of the house, each measuring no more than two foot X two foot, allow the moisture to escape. This offers virtually no escape for the moisture, which has resulted in extensive formation of wood decay.

“I found several structural parts completely rotted through due to wood decay caused by excessive moisture. This included the main supporting 4X6 sills, 2 X 6 floor joists, and tongue and grove [sic] subflooring above the floor joists. The area around the air conditioning closet, and the living room and bedroom adjacent to the air conditioning closet appeared to suffer the heaviest deterioation [sic]. The wood decay however was not concentrated to any one area, but on all the wood parts under the house.”
* * * * * *
“It is obvious that the wood decay problem is in an advanced stage in no less than the entire bedroom and living room area adjacent to the air conditioning closet. The rest of the floor area has wood decay fungus growing on it, but appears not to be completly [sic] rotted through. This problem however will only worsen until the moisture problem is eliminated and the fungus treated. Repair to the areas of advanced wood decay would in *599 volve, in my opinion, complete replacement.”
Pickett gave no price for the repairs.
The undisputed evidence quoted above reveals a substantial deterioration of the substructure of the house. This condition had clearly preceded the sale in question. The existence of such a redhibitory vice would be grounds for a reduction in price if such condition could not be discovered by simple inspection.
The plaintiff testified that, before the sale, her brother looked through the vent holes in the brick chain wall around the bottom of the house, but could not see any deterioration of the substructure. Neither plaintiff nor her brother crawled through the vent holes to go under the house to make a more definitive inspection. Such redhibitory vice could be discovered only by a thorough inspection. Such condition could not be made by simple inspection. This position is buttressed by the testimony of defendant, Gabriel Perrio, Jr., who testified that he had replaced the sill to level the floor after the sale with plaintiff was consummated. He stated that as he worked under the house replacing the sill he did not see any deterioration of the other portions of the substructure.
In the case of Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963), the court stated that the term “simple inspection” relieves the buyer of examining the inner or hidden parts of the objects of the sale for the purpose of ascertaining “latent defects.” The defective condition of the substructure of this house was discernable only by crawling under the house and could not be perceived by inspection inside the premises. Under the circumstances, the defective condition could not be discovered by a simple inspection. The condition was a hidden defect. See: Kolwe v. Owens, 357 So.2d 1333 (La.App. 4th Cir. 1978).
The fact that plaintiff saw that the floor was unlevel did not put her on notice of such an extensive defective condition. This is especially true in view of the fact that Perrio assured plaintiff that the unlevel condition was caused by a sunken pillar and that he would change the sill and remedy the condition.
The defective condition of the substructure would entitle the plaintiff to a reduction of the price unless it can be said that she waived such warranty. This leads us to the third issue in this case.
DID PLAINTIFF WAIVE THE IMPLIED WARRANTY OF FITNESS?
The plaintiff testified that, at the time the purchase agreement was signed, she stated that she was concerned about the unlevel condition of the floor and also that she wanted to check the insulation in the attic. As a result of this conversation, the following clause was inserted into the purchase agreement:

“This sale is contingent upon inspection to show subfloor to be in good condition and also that there’s ample insulation in the attic.”

In his reasons for judgment, the trial judge stated as follows:
“ What the Court is trying to say is that in both instances of the complaints there was a remedy for the plaintiff/buyer to have the property inspected and demand these items to be done prior to the consummation of the sale, which was, according to the Agreement to Purchase or Sell, sale to be on or before September 24, 1979. . . . With those options available to the plaintiff, the plaintiff, the Court finds, was remiss in not taking advantage of those clauses in the contract and delaying the consummation of the sale until such time as a thorough inspection had been made.”
The net effect of the trial court’s reasoning is that the plaintiff’s failure to have a thorough inspection of the substructure, before the act of sale, operated as a waiver of implied warranty under the clause inserted in the purchase agreement. The trial court erred in this ruling.
This court, in the case of Matt v. Laperouse, 371 So.2d 1284, 1285 (La.App. 3rd Cir. 1979), observed as follows:

*600
“Our Supreme Court in Rev v. Cuccia. 298 So.2d 840 (La.1974), said the following with regard to the sale of products with hidden defects:

‘In Louisiana sales, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product’s intended use. Civil Code Articles 2475, 2476, 2520; Media Production Consultants. Inc. v. Mercedes-Benz of North America. Inc.. 262 La. 80, 262 So.2d 377 (1972). The seller, of course, can limit this warranty by declaring to the buyer the hidden defects at the time of the sale, Article 2522, or can otherwise limit his oblierations as seller, providing he do so clearly and unambiguously. Article 2474.’ ...” (Emphasis ours.)
A mere reading of the clause inserted in the purchase agreement cannot be considered as a clear and unambiguous waiver of implied warranty. Further, as plaintiff explained, the clause was inserted primarily to draw defendants’ attention to the fact that the floor was sagging and defendants would level same as agreed. This testimony is not disputed. The clause does not provide whether the inspection was to be made before or after the act of sale. In this case the inspection was made after the sale was consummated. The deteriorated condition was found and it cannot be said that the clause had the effect of waiving the defendants’ statutory implied warranty.
ATTORNEY’S FEES
We reject the plaintiff’s demands for attorney’s fees. There has been no showing that the defendants were aware of these defects. The defendants knew that the drain line for the air conditioner would become plugged at times but a layman would not be apprised of the serious defect in the system by the existence of this condition. The defendant, Mr. Perrio, also had been beneath the house to repair one bad sill but he expressly denied making an examination of, nor did he see any structural problems beneath the house. We note that the space beneath the house was almost completely walled in and consequently the lighting would be extremely poor. Under these circumstances the deteriorated condition of the sills, floor joists and subflooring would not be obvious to anyone who ventured beneath the house. The vendor’s good faith precludes the recovery of attorney’s fees. Busenlener v. Peck, 316 So.2d 27 (La.App. 1st Cir. 1975); LSA-C.C. arts. 2545 and 2547.
The plaintiff would be entitled to a reduction of the purchase price of the house by the amount needed to make the repairs to the substructure and also for the replacement of the air conditioning unit. As we have previously set forth, the undisputed estimate for repairs for the house was $25,-000.00 and the invoice for the installation of the air conditioning and heating unit was $2,490.00. The price of the house will be reduced by $27,490.00.
For the reasons assigned, the judgment of the trial court is reversed and judgment is rendered herein in favor of the plaintiff-appellant and against defendants-appellees in the amount of $27,490.00. The costs of this appeal are assessed to defendants-ap-pellees.
REVERSED AND RENDERED.

. Also, the purchase agreement contained the following provision regarding mechanical equipment:
“The seller agrees that all mechanical equipment, plumbing, and wiring contained in or on the premises and subject to this agreement, will be in good operating order upon delivery of possession or title, whichever is first. Should an inspection of the premises, including equipment therein, be required, such inspection shall be at the sole cost of Buyer. Should repairs be made, they will be made at the expense of the Seller." (Emphasis ours.)