412 So.2d 176 (1982)
Richard Craig BROUSSARD, Plaintiff-Appellee,
v.
Donald James BREAUX, et ux, Defendants-Appellants.
No. 8671.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1982.
Rehearing Denied April 29, 1982.
*178 Leithead, Scott, Boudreau, Myrick & Richard, Everett R. Scott, Jr., Lake Charles, for defendants-appellants.
McClain, Morgan & Savoy, R. Scott McClain, Lake Charles, for plaintiff-appellee-appellant.
A. J. Fazzio, Lake Charles, for defendant-appellee.
Before FORET, CUTRER and DOUCET, JJ.
FORET, Judge.
Richard Craig Broussard and his wife, Mary Joan Marye Broussard, (plaintiffs)[1] brought this action in redhibition seeking the rescission of a sale of a certain piece of land, together with a house constructed thereon, they purchased from defendants, Donald James Breaux and his wife, Lucille Dever Breaux. Plaintiffs, by means of a supplemental and amending petition, subsequently limited their demand to a reduction of the price.
Defendants, after filing certain exceptions and answering plaintiffs' petition, reconvened against plaintiffs, seeking a reduction of the sale conditioned upon the trial court's taking of certain actions with respect to plaintiffs' main demand. In addition, defendants brought a third party demand against Century 21 Guglielmo Real Estate Corporation, Inc., Jules E. Guglielmo, Pat Rawlins, and Dwight Anderson, (third party defendants) seeking full indemnity and/or contribution for any damages defendants might be condemned to pay plaintiffs and to recover from third party defendants any damages they might suffer as a result of plaintiffs' successful prosecution of their action.
Trial of plaintiffs' main demand, and the incidental actions, resulted in a judgment in favor of plaintiffs and against defendants, condemning defendants to pay to plaintiffs the full sum of $10,046.25 with legal interest from date of judicial demand until paid. The trial court further rendered judgment in favor of third party defendants and against third party plaintiffs (defendants), denying the third party demand.
Defendants appeal suspensively from the trial court's judgment and raise the following issues:

*179 (1) Whether the trial court abused its discretion in allowing plaintiffs to file a supplemental and amending petition limiting their demand to a reduction of the price just two days prior to trial;
(2) Whether a tender of the defective object of the sale back to the seller is a condition precedent for bringing an action for a reduction of the price;
(3) Whether the trial court committed manifest error in finding that plaintiffs were entitled to a reduction in the price based on the evidence presented;
(4) Whether the trial court committed manifest error in failing to order a rescission of the sale because of an alleged error in the principal cause or motive of defendants for entering into the contract, i.e., the price.
Plaintiffs have answered the appeal and raise the following issue:
Whether the trial court committed manifest error in basing its award to them on the cost of repairing the defects in the house at the time of sale, rather than at the time of trial.
Plaintiffs seek to have this Court raise the trial court's award to them to $13,060.12.

FACTS
Plaintiffs purchased a lot, together with a house constructed thereon, from defendants, on November 16, 1977, for the price of $54,000. The property is located in Lake Charles and bears municipal number 624 West LaGrange Street. Plaintiffs began to notice certain defects in the house shortly after moving therein, which grew worse with the passage of time. These defects included such things as: cracks where two walls met; floors that were slanted, not level; rotted and deteriorated eaves; ceilings that began to crack and sag; cracks in the exterior brick work; cracks in the cement slab on which the house was constructed; cracks appearing around door and window frames; and, the complete absence of insulation in the attic.
Plaintiffs instituted this action on October 5, 1978, alleging: the existence of some of the above mentioned defects in the house; that defendants had assured them that the house was in good order and repair; that a simple inspection by them had revealed no apparent defects in the house; that defendants were aware of these defects, but concealed them from plaintiffs; and, that if plaintiffs had known of the existence of these defects, they would not have purchased the house. Plaintiffs prayed: that the sale be rescinded; that defendants be ordered to reimburse them for certain expenses they incurred in purchasing and owning the house, i.e., interest payments made on the loan used to purchase the house, property taxes, expenses incurred in closing the sale, and premiums paid for insurance on the property; that they recover damages from defendants in the amount of $5,000 for inconvenience, embarrassment and mental anguish; and, that defendants be ordered to pay reasonable attorney's fees of $4,000.
Defendants filed a dilatory exception of vagueness alleging that plaintiffs' petition failed to sufficiently identify the structural defects in the house of which they were complaining. A hearing was held on this exception and the trial court overruled it. Defendants then filed a peremptory exception of no cause of action arguing that plaintiffs' petition failed to allege that defendants had been tendered any specific demands to repair, remedy, or correct the defects or vices complained of. An answer, consisting of a general denial, was contained in the same pleading as the exception of no cause of action and included a prayer that plaintiffs' claims and demands be dismissed at their costs. There is no indication in the record of how the trial court ruled, if at all, on the exception of no cause of action.
As for defendants' third party demand, it is sufficient to simply note that defendants have raised no issue on appeal concerning the trial court's judgment denying it, and that portion of the judgment is final.
*180 Defendants filed a reconventional demand alleging that if the trial court found that redhibitory vices or defects existed in the house at the time of sale, and that plaintiffs were entitled to recover damages in an amount exceeding 1/20th of the purchase price, then an error in the principal cause or motive for entering into the sale on their part existed, i.e., the price was below that for which they would have consented to or effected the sale. In this event, they prayed that the trial court declare the sale invalid and order it rescinded.

PLAINTIFFS' AMENDMENT OF PETITION
Defendants contend that the trial court abused its discretion in allowing plaintiffs to amend their petition to convert their redhibitory action to an action for a reduction of the price since the supplemental and amending petition was filed just two days before trial.
LSA-C.C.P. Article 1151 provides, in pertinent part:
"Art. 1151. Amendment of petition and answer; answer to amended petition
A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party."
There was no written consent given by defendants to allow plaintiffs to amend their petition.
Under Louisiana jurisprudence and LSA-C.C.P. Article 1151, when there is no written consent to allow such by the adverse party, it is within the sound discretion of the trial court to accept or refuse an amendment to the petition after answer has been filed. The trial judge has much discretion in allowing amendments after an answer is filed, and his ruling will not be disturbed unless there has been an abuse of that discretion. Sikes v. McLean Trucking Company, 383 So.2d 111 (La.App. 3 Cir. 1980). That an amendment involves a departure from the facts previously alleged or a change in the theory of recovery or the relief requested, is no bar to its allowance, since consistency in pleading is not required. Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La.1981).
Defendants argue that they filed their reconventional demand seeking, in the alternative, a rescission of the sale after plaintiffs filed their original petition, but prior to the time plaintiffs filed their supplemental and amending petition. They seem to argue that the trial court's order allowing plaintiffs to file their supplemental and amending petition somehow precluded them from obtaining a rescission of the sale as prayed for in their reconventional demand. In essence, they contend that a seller should have the option of taking back the property sold, if the buyer proves the existence of some redhibitory vice or defect in the thing.
We find no merit to defendants' contention. The right to rescind the sale for a redhibitory defect is personal to the buyer. LSA-C.C. Article 2520; Aucoin v. Fontenot, 334 So.2d 773 (La.App. 3 Cir. 1976).
We find no abuse of discretion by the trial court in allowing plaintiffs to file their supplemental and amending petition.

TENDER FOR REPAIR, REMEDY, OR CORRECTION OF VICES OR DEFECTS
Defendants contend that plaintiffs' action for a reduction of the price should have been dismissed by the trial court because they failed to tender the house to defendants for repairs, remedy, or correction of the vices or defects alleged to exist therein. Defendants base their contention on the provisions of LSA-C.C. Articles 2544 and 2531.
LSA-C.C. Article 2544 provides:
"Art. 2544. Rules governing action for reduction of price

*181 Art. 2544. The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action."
LSA-C.C. Article 2531 provides, in pertinent part:
"Art. 2531. Liability of seller in good faith for restitution of price
Art. 2531. The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it."
A tender of the object sold for repair of vices, while usually a condition precedent to an action in redhibition, is not required to maintain an action in quanti minoris. Coffin v. LaBorde, 393 So.2d 915 (La.App. 4 Cir. 1981), writ denied, 396 So.2d 1349 (La.1981); Dunn v. Pauratore, 387 So.2d 1227 (La.App. 1 Cir. 1980); Rausch v. Hanberry, 377 So.2d 901 (La.App. 4 Cir. 1979); Sokol v. Bob McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4 Cir. 1975).
We find no merit in defendants' contention. However, we note that the evidence shows that plaintiffs contacted defendants on three occasions, prior to instituting their action, asking that defendants come to the house so that the defects could be pointed out to them. Defendants admit that they did nothing in response to these requests.

PROOF THAT VICES OR DEFECTS EXISTED AT TIME OF SALE
Defendants contend that plaintiffs failed to prove that the vices or defects complained of existed in the house at the time it was sold to them. Defendants argue that, in the absence of such proof, plaintiffs are unable to maintain an action for a reduction in the price. They base their argument on the provisions of LSA-C.C. Articles 2544, reproduced above, and 2530.
LSA-C.C. Article 2530 provides:
"Art. 2530. Proof of existence of vice before sale
Art. 2530. The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale."
A buyer who institutes an action for a reduction of the price bears the same burden of proof as one who institutes the redhibitory action, and must prove that the vice or defect existed before the sale was made to him. Langlinais v. Soileau, 58 So.2d 274 (La.App. 1 Cir. 1952); Myers v. Southern Bus Sales, Inc., 347 So.2d 894 (La. App. 3 Cir. 1977); King v. Moore, 61 So.2d 253 (La.App. 2 Cir. 1952); Dwyer Lumber Company, Inc. v. Murphy Lumber and Supply Co., Inc., 116 So.2d 64 (La.App. 1 Cir. 1959).
LSA-C.C. Article 2541 provides:
"Art. 2541. Reduction of price for vices warranting redhibition
Art. 2541. Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price."
It can be seen that, under the provisions of LSA-C.C. Articles 2530 and 2541, a buyer may maintain an action for a reduction of the price by proving that a defect existed in the thing sold, at the time of sale, which diminished the value of the thing, and it is not necessary that he prove the existence of a redhibitory vice or defect in the thing.
Pat Denby, a foundation repairman, was accepted by the court as an expert in the field of foundation repair. He testified that he inspected the house on July 13, 1978, some eight months after plaintiffs had purchased it. He stated that he found that the slab on which the house was constructed *182 had failed in such a manner that parts of it were no longer level and that it would take quite a bit of work to relevel it. He was asked if he could determine how long this condition had existed, and it was his opinion that it had happened over a period of several years.
Denby based his opinion on a number of factors which he related to the court. He noted that when a slab fails, it will cause cracks to open up around window frames and that is what happened here. He found quite a bit of caulking around the window frames which was placed there in an apparent attempt to fill the cracks. He stated that it looked like the caulking had been painted over with what appeared to be relatively fresh paint. We note that defendants testified that they had painted the house just eight months before the sale. Denby also found evidence which indicated that certain doors on the inside of the house had been adjusted to compensate for effects the failing slab had on the door frames and that repairs had been made to sheetrock cracking under the stress being placed on it.
Earl Miller, a general contractor, was accepted by the court as an expert in the field of renovation and repair of residences. He stated that he inspected the house on July 18, 1978, and found places where the soffit[2] and fascia[3] of the eaves of the house had deteriorated. He estimated that it would take approximately a year for conditions such as he observed to develop. This would place the beginning of the deterioration of these parts of the house some four months before the sale took place. Miller was unable to determine any specific cause for the cracks appearing in the sheetrock or around the window frames.
Fred Harris testified that he was an estimator and field superintendent for Realco, Ltd., a general contracting firm. He was accepted by the court as an expert in the field of construction estimating for repair work. He stated that he inspected plaintiffs' house shortly before trial for the purpose of estimating the cost of repairing some of the alleged defects. His testimony indicated that the defects had grown worse with the passage of time. He summarized his observations as follows:
"A Well, the outside, the brick is cracked; the slab is cracked, and the bricks are caved away, given away, windows away, cornice rotted, the overhang, several spots justjust about all the way around. All your caulking is pulled away. You can stick your fingers in it right now, and because of the slab cracking, all your sheetrock throughout, your doors are out of line, and just about all your ceilings and walls are cracked, both your ceilings, and that's pretty general. You'd just about have to repaint and re-work the whole inside of the house."
Harris was of the opinion that excessive amounts of caulking had been applied around window frames, etc., in a number of layers, in an effort to fill in the ever-widening cracks caused by the failing slab. He felt that the problems with the slab had existed for several years, although he couldn't really say just how long they had existed. He expressed the opinion that the deterioration he observed in the soffit and fascia of the eaves was of such a degree that it had taken longer than three years to develop. Again, this would place the defects in those items as existing prior to the sale. He stated that these deteriorated areas had been painted over, but he was unable to tell if the paint had been applied to wood that was already rotten.
We find that plaintiffs have proved, by a preponderance of the evidence, that the defects complained of existed at the time they purchased the house from defendants.

APPARENCY OF DEFECTS
Defendants next contend that any defects that did exist in the house at the time of sale were such that plaintiffs could have discovered them by simple inspection. *183 They argue that because of this, plaintiffs are unable to maintain an action for a reduction of the price. Defendants base this contention on the provisions of LSA-C.C. Articles 2544 and 2521.
LSA-C.C. Article 2521 provides:
"Art. 2521. Apparent defects discoverable by buyer
Art. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
The action for a reduction of the price being subject to the same rules and to the same limitations as the redhibitory action, it follows that if the defects complained of by the buyer are apparent, that is, such as he "might have discovered by simple inspection", he cannot recover. Bayou Rapides Lumber Co. v. Davies, 221 La. 1099, 61 So.2d 885 (1952).
Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963), found that the term "simple inspection" as used in LSA-C.C. Article 2521 relieves the buyer of examining the inner or hidden parts of the object of the sale for the purpose of ascertaining the existence of latent defects. See also Olmstead v. Perrio, 401 So.2d 595 (La.App. 3 Cir. 1981).
Plaintiff, Mary Broussard, testified that she visited the house four times before she and her husband purchased it. On each of these visits, the house contained defendants' furniture and the closets were filled with defendants' clothing. This made it difficult for her to see any defect existing in the house. However, the defects began to manifest themselves after defendants moved all of their belongings out and she began to clean the house. By that time, plaintiffs had already purchased the house. Mrs. Broussard testified that she never saw any defects in the house on any of the visits she made prior to the sale.
Plaintiff, Richard Broussard, testified that he saw only two minor problems with the house on the visits he made prior to purchasing it. He saw that one of the gutters had what looked like putty on it, but it didn't concern him since he was going to remove them. He also noticed a hairline crack above one of the bedroom doors. Mr. Broussard stated that he asked defendants if there were any problems with the house and they indicated to him that there were none. Mr. Breaux told him they had put a new roof on the house and that it had been painted recently. Mr. Breaux also told him that the attic of the house was insulated, but after he purchased the house, and crawled up in the attic, he found that there was none.
Pat Denby, accepted by the court as an expert in the field of foundation repair, acknowledged that he had written a letter, introduced in evidence, in which he stated, "... that a lot of caulking and painting concealed cracks and true condition of foundation to the average person, however being in this line of work it was obvious to me." The letter was written at the same time that he made his inspection of the house, which was some eight months after the sale.
Rodney Reddoch testified that he was a real estate broker and appraiser, and that he appraised the house in connection with plaintiffs' loan application to Guaranty Federal Savings & Loan Association of Lake Charles. He was accepted by the trial court as an expert in the field of real estate appraisal. He stated that he inspected the house when he made his appraisal and observed nothing that indicated the existence of any serious defects in it. His report, introduced in evidence, reflects this.
Jules Guglielmo testified that he had been engaged in the real estate business for over twenty years, and that he was licensed through the Louisiana Real Estate Commission. He stated that he accompanied plaintiffs to the house on one of their visits before they purchased it. Mr. Broussard asked him to look at the outside of the house, in particular, and asked him questions about the house as they walked around observing it. Plaintiff pointed to the spot where he observed putty on one of the gutters and Guglielmo advised him to remove them as they tended to rot the fascia boards behind them. Guglielmo then *184 pointed out an area where some bricks had been regrouted[4], but told plaintiff that it probably had been done because the bricks had cracked. He could remember seeing nothing else of any significance on the exterior of the house. He stated that he thought the house was rather nice on the inside and that he didn't really notice anything out of the ordinary. The only crack in the sheetrock he noticed was over one of the doors.
Dwight Anderson accompanied Mr. Broussard and Guglielmo on their walk around the house. He remembered Mr. Broussard asking about the crack in the bricks and suggested that Mr. Broussard get a structural engineer to take a look at it, if he was concerned about it. He, like Guglielmo, testified that there was no evidence of any crack in the slab itself directly below the area where the crack in the bricks was located.
Patricia Hawkins testified that she accompanied plaintiffs on their first visit to the house. She is also licensed by the Louisiana Real Estate Commission. She stated that she took plaintiffs around the interior of the home. She noticed the crack above one of the doors and that the door itself was dragging. She then suggested that Guglielmo and Anderson accompany plaintiffs on their next visit as she was relatively inexperienced in the real estate business, and did not fully understand what the crack and dragging door might indicate. She did believe that it could mean that the house was settling somewhat. However, she stated that she agreed with Guglielmo's assessment that the house was a good buy for plaintiffs as they were able to get it for less than defendants had been asking for it.
We find that the defects existing in the house at the time of sale were such that they were not apparent upon a "simple inspection" by average persons such as plaintiffs and, in fact, were not apparent to some persons knowledgeable in the real estate business.
We conclude that the trial court correctly found that plaintiffs are entitled to a reduction in the price.

ALLEGED ERROR IN THE PRINCIPAL MOTIVE FOR CONTRACTING
Defendants contend that the trial court should have ordered a rescission of the sale as prayed for in their reconventional demand. They argue that an error exists in their principal motive for entering into the contract of sale, i.e., they would have never sold their house at the reduced price ordered by the trial court. We find no merit to this contention. We would be reading LSA-C.C. Article 2541, quoted supra, out of the Civil Code if we accepted defendants' contention.

AMOUNT OF REDUCTION IN PRICE
Plaintiffs have answered this appeal contending that the trial court committed manifest error in condemning defendants to pay $10,046.25 to them for repair of the defects found to exist in the house and, in effect, reducing the price by that amount. The record shows that this was the amount found necessary by the trial court to repair the defects as of the time of sale. Plaintiffs argue that the correct measure of recovery in cases such as this is the amount necessary to repair the defects at the time of trial. We agree with plaintiffs.
The measure of recovery in an action in quanti minoris involving a building is the amount necessary to convert the unsound structure into a sound one. Fraser v. Ameling, 277 So.2d 633 (La.1973); Lemoine v. Hebert, 395 So.2d 353 (La.App. 1 Cir. 1980); Maguire v. Masino, 325 So.2d 844 (La.App. 4 Cir. 1975).
It is our opinion that, in actions such as this, the proper measure of recovery is the amount necessary to convert the unsound structure into a sound one as of the date of trial, or the amount actually expended by the buyer to do so prior to trial.
*185 David Lundy testified that he had been engaged in the building supply business for approximately twenty years. He estimated that it would cost $892.50 to insulate the attic at the time of trial. Defendants objected to this testimony on the ground that it would enlarge the pleadings. Defendants argued that plaintiffs had asked for only $491.40 for this item in their supplemental and amending petition. The trial court apparently agreed with defendants, but awarded plaintiffs only $446.25, finding this to be the amount necessary to insulate the attic at the time of sale. We conclude that the trial court committed manifest error in basing its award on the amounts necessary to remedy this defect on the date of sale. In addition, we find that Lundy's testimony was not an enlargement of the pleadings.
Plaintiffs' allegations contained in their supplemental and amending petition clearly identify the amounts set forth therein for repair of defects as being based on estimates obtained in mid-1978. Paragraph 11 of that pleading then sets forth the following:

"11.
"In as much as the estimates for repairs set forth in paragraph 10, as amended herein, were obtained three years ago, that the costs for such repairs will have increased substantially since then and your petitioner is entitled to recover the actual costs of such repairs as of the date of trial of this matter."
It is clear that the allegations contained in paragraph 11 raise the issue of what would be the actual cost of repairs at the time of trial. Thus, Lundy's testimony was directed toward an issue raised by the pleadings and should have been considered by the trial court. We find that the cost of insulating the attic at the time of trial is $892.50. However, see footnote 5, infra.
The trial court awarded plaintiffs $3,600 for repair of the soffit and fascia boards, sheetrock, etc. This was the amount estimated by Earl Miller as the cost of making those repairs on July 18, 1978, some eight months after the sale. Fred Harris estimated the cost of making those repairs on May 18, 1981, some two days before trial, as being $6,655. The trial court accepted Miller's estimate since it was made closer to the date of sale and was within the amounts set forth in plaintiffs' supplemental and amending petition. For the reasons expressed above, we find that the trial court committed manifest error in awarding plaintiffs only $3,600 to make these repairs. See footnote 5, infra.
Finally, the trial court awarded plaintiffs $6,000 for the cost of repairs to the slab. This award was based on an estimate given by Pat Denby in mid-1978. Bill Chalmers estimated that it would cost $6,350 to repair the slab as of May 4, 1981, less than a month before trial. See footnote 5, infra.
We amend the trial court's judgment to increase plaintiffs' award to $13,060.12[5], the amount sought by plaintiffs in their answer to this appeal.
For the above and foregoing reasons, the trial court's judgment is amended to increase the award in favor of plaintiffs and against defendants to $13,060.12 with legal interest thereon from date of judicial demand until paid. The trial court's judgment is affirmed as amended.
All costs of this appeal are assessed against defendants-appellants.
AFFIRMED AS AMENDED.
NOTES
[1] This suit was originally brought by Richard Craig Broussard as plaintiff. However, in response to a peremptory exception filed by defendants questioning his right to proceed without naming his wife, Mary Joan Marye Broussard, as a party plaintiff, the trial court allowed Broussard to orally amend his pleadings to name her as such with leave to file a written amendment to that effect.
[2] The soffit is the underside of the eaves of a house.
[3] The fascia are the flat horizontal boards composing the eaves of a house.
[4] Regrouting refers to the act of removing old mortar from bricks and replacing it with new mortar.
[5] The evidence shows that it would have taken $13,897.50 to convert plaintiffs' house from an unsound structure to a sound one at the time of trial. However, plaintiffs sought to have this Court increase the trial court's award to only $13,060.12 in their answer to the appeal, and we will accordingly limit the increase to that amount.