KNOLL, Judge.
Martin Fraering and his wife, Melissa Mims Fraering, appeal the adequacy of a judgment of the trial court which awarded them a $3500 reduction in price for certain redhibitory defects which affected a brick home the Fraerings purchased from State National Bank (hereafter State National). The trial court ruled that although the Fraerings sought a rescission of the sale, a reduction in the price was appropriate since the evidence established only a partial failure of consideration. We amend to increase the judgment, finding the price reduction inadequate to compensate the Fraerings for the defects established.
*821 FACTS
The brick house which is the subject of this redhibitory action was constructed in a New Iberia subdivision in 1982 by Big D Developers, Incorporated. When Big D went into bankruptcy, State National repossessed the house and it remained in its possession until December 28, 1984, when the Fraerings purchased it from State National for $87,500. Within a year of their purchase, the Fraerings encountered water seepage into the house on six to ten occasions in the master bedroom, the kitchen, the dining area, the children’s bedroom, the utility room, and the front and rear entrances.
This suit against State National was filed within one year of the Fraerings’ purchase of their home, but at their direction State National was not served with a copy of the petition until October of 1986. In early 1987, State National sent out a housing contractor to determine the source of the Fraerings’ problem, and ultimately State National expended approximately $6,000 to remedy the water seepage problem. In spite of these remedial efforts, the Fraer-ings pressed their claim against State National, contending that the water seepage problem was not solved.
PRICE REDUCTION
The Fraerings contend that the trial court abused its discretion in awarding them only a $3500 reduction in the purchase price.
LSA-C.C. Art. 2543 provides that in a redhibitory action, the trial court may decree merely a reduction of the price. In a redhibitory action the plaintiff must prove the thing sold contained a hidden defect which was not apparent by ordinary inspection and which rendered the thing unfit for its intended use or so imperfect that the purchaser would not have bought it had he known of the defect. LSA-C.C. Art. 2520; Davis v. Davis 353 So.2d 1060 (La.App. 2nd Cir.1977), writ denied, 355 So.2d 549 (La.1978). Apparent defects, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices. LSA-C.C. Art. 2521. The existence of a redhibitory defect is a question of fact which can not be disturbed unless the record as a whole establishes that the finding is clearly wrong. Fogal v. Boudreaux, 497 So.2d 366 (La.App. 3rd Cir.1986).
It is within the discretion of the trial court to award either a rescission of the sale or a reduction in the purchase price in redhibitory actions. Fogal, supra at 370. This is essentially a factual determination best made by the trial court. Ark-La-Tex Builders & Realty, Inc. v. Hoge, 344 So.2d 90 (La.App. 2nd Cir.1977).
In the case sub judice, the Fraerings established that the flooding in the house occurred when a steady rain was accompanied by moderate to high winds. When these weather conditions occurred, the carpet and flooring in the various parts of the house enumerated hereinabove would become water soaked. Photographs introduced into evidence graphically demonstrated the moisture and mildew under the carpeting, the rotting carpet strips along the perimeter of the master bedroom, as well as rotting parts of the wooden doors and door casings at the entrances.
John H. Sandifer, an expert accepted by the trial court in residential construction, testified on behalf of the Fraerings. Mr. Sandifer physically examined the Fraering residence and noted that he found an interi- or wall cracked on the front of the house, that the mortar used to bind the bricks was of inferior quality, that there was a tapering ⅛ inch crack in the cement floor in the living room beneath the carpeting, and that the brick ledge around the house was not as wide as it should have been. On this basis, Mr. Sandifer opined that water was seeping into the house through the foundation and brick work, and that the only way to correct the defects was to completely rebuild the house. Mr. Sandifer did not conduct any scientific testing of the mortar and did no soil compaction studies with regard to the slab cracking.
Alfred Joseph Theriot was qualified as an expert in the field of architecture and general residential construction, and testified on behalf of State National. Mr. Ther-iot testified that he inspected the Fraering *822 home and found on that date that there was standing water in the exterior utility room and dampness in the master bedroom. He determined that the leakage was not coming from the roof, that the front and rear porches were improperly sloped toward the house, that the roof design concentrated the flow of rain water toward the porches, that the door in the utility room did not have a metal threshhold, and that damp, coarse flashing on the brick ledge around the house was either missing or improperly installed in various locations. He opined that the improperly sloped porches, the lack of gutters at the front of the house, and improperly installed flashing were the primary causes for the seepage of water into the house; he also thought that the weep holes in the brick ledge around the house were possibly clogged. Mr. Theriot further stated that the slab cracking noted by Mr. Sandifer in the living room was normal in the region around New Iberia, and he did not assign any significance to the presence of a tapered ⅛ inch crack in the living room.
In March of 1988, at State National’s request, Mr. Theriot’s work crew made the recommended corrections to the Fraering home at a cost of approximately $6000. When the work crew dismantled some of the bricks, Mr. Theriot confirmed that the weep holes in the brick ledge were indeed clogged, and the damp, coarse flashing had been improperly installed when the house was built. Upon Mr. Theriot’s suggestion a general silicon sealant was also applied to the bricks around the exterior of the house to deter the penetration of water through them.
The record further shows that State National, at its expense, also replaced the carpeting in the Fraerings’ master bedroom.
After completing the repairs, Mr. Theriot visited the Fraering home on a rainy day and advised the court that after staying approximately thirty minutes in the house, he noted no water seepage. The Fraerings disagreed, contending that seepage recurred afterwards.
In its oral reasons for judgment the trial court determined that there were latent defects in the house which, had the Fraer-ings known of these conditions, they would not have purchased. Neither party to this action takes exception to this finding of the trial court.
In reviewing the record of this matter, it is clear that the trial court was presented with conflicting expert testimony regarding the origin of the Fraerings’ water seepage problem. After thoroughly reviewing the transcript of these proceedings, we can not say that the trial court abused its discretion in favoring the testimony of Mr. Theri-ot over that of Mr. Sandifer in its determination of the causes of the water seepage.
Nonetheless, even though we find no abuse in the trial court’s determination of the source of the seepage problem, we find that the price reduction which the trial court awarded is inadequate, particularly when viewed in light of the fact that the structure involved herein is new construction and the seepage problems occurred repeatedly.
In an action for the reduction of price of a house because of defects existing at the time of the sale, the correct measure of recovery is the amount necessary to repair the defects at the time of trial. Broussard v. Breaux, 412 So.2d 176 (La.App. 3rd Cir.1982), writ denied, 416 So.2d 115 (La.1982). Water seepage occurred approximately six to ten times since the Fraerings purchased their house. At the time of trial, the Fraerings testified that even after State National repaired the house, water seepage recurred, as recent as within one week prior to trial. Accordingly, the record supports that the latent defects in the Fraerings’ home have not been remedied.
The trial court stressed in its oral reasons for judgment that the Fraerings were partially responsible for failing to maintain the wooden doors at the entrances in the front and rear of the house. Its conclusions in this regard were based on the testimony of Mr. Theriot that upon inspection he noted that these portals had not been maintained to sufficiently seal the *823 wood from the elements. The photographs reflect that the exterior doors of this newly constructed house were painted, and although they had been exposed to the elements for only five years at the time of trial, the exterior and interior of the doors showed extensive areas of rotten wood. In light of the serious hidden defects in this new house and the design problems which concentrated water at the front and rear entrances, we find no preponderance of the evidence that the Fraerings were responsible for this damage. Therefore, to the extent that the trial court may have relied upon this purported lack of maintenance by the Fraerings in mitigating the bank’s liability for damages, we hold that the trial court was manifestly wrong.
At trial, State National emphasized that on at least three occasions the Fraerings used a sprinkler to duplicate the weather conditions which caused water seepage through the bricks. In each of these instances the Fraerings limited the spraying to one of the master bedroom’s exterior walls. On each demonstration water seepage occurred, once as quickly as twenty minutes after the demonstration began. Although the trial court did not address this question in its oral reasons for judgment, we have reviewed the record carefully to ascertain if it was one of these demonstrations which was the cause of the water seepage after Mr. Theriot made the repairs, and find the evidence preponderates that it was not.
Considering the pervasiveness of the defects, the inability of State National to remedy them, and the persistence of the water seepage, we find that the least amount the trial court could have awarded was the sum of $15,000, and will amend the trial court’s judgment accordingly.
For the foregoing reasons, the judgment of the trial court is amended to increase the amount awarded for reduction of price to $15,000, with legal interest to run thereon from date of judicial demand, December 27, 1985, until paid. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed to State National Bank.
AMENDED, AND AFFIRMED AS AMENDED.